UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK



UNITED STATES OF AMERICA,

v.

RICHARD LUCAS,

        Defendant.

**DECISION AND ORDER**

1:17-CR-00129 EAW

# INTRODUCTION

Defendant Richard Lucas ("Defendant") stands accused by way of a one-count Indictment returned on July 11, 2017, with conspiracy to possess with intent to distribute and to distribute 5 kilograms or more of cocaine, in violation of 21 U.S.C. § 846. (Dkt. 18). Presently before the Court are Defendant's Objections (Dkt. 121) to the Report and Recommendation issued by United States Magistrate Judge Jeremiah J. McCarthy on September 7, 2018 (Dkt. 115), recommending denial of Defendant's supplemental motion to suppress evidence obtained during Defendant's encounter with law enforcement on July 20, 2015, at the San Diego International Airport (Dkt. 50). For the reasons set forth below and for the reasons set forth in more detail in the Report and Recommendation, the Court overrules Defendant's Objections and adopts Judge McCarthy's Report and Recommendation in its entirety, thus denying Defendant's supplemental suppression motion.

## PROCEDURAL BACKGROUND

The Court referred Defendant's supplemental motion to suppress to Judge McCarthy pursuant to 28 U.S.C. § 636(b)(1)(A) and (B). (Dkt. 19; Dkt. 72; Dkt. 73; Dkt. 74; Dkt. 75). Although not the subject of Defendant's initial omnibus pretrial motions (Dkt. 35),[1] Defendant filed a supplemental motion to suppress evidence and statements from his July 20, 2015, encounter with law enforcement at the San Diego International Airport (Dkt. 50). Judge McCarthy conducted an evidentiary hearing on May 7, 2018, at which time the Government presented testimony from San Diego County Deputy Sheriff Eric Mitchell. (Dkt. 83 at 4-84). Deputy Mitchel testified concerning an encounter with Defendant at the San Diego International Airport on July 20, 2015, while Deputy Mitchell was employed as a police officer with the San Diego Harbor Police Department. (*Id.*).

On September 7, 2018, Judge McCarthy issued a thorough Report and Recommendation, recommending that Defendant's supplemental suppression motion be denied. (Dkt. 115). Judge McCarthy concluded that the initial encounter between Defendant and law enforcement on July 20, 2015, was consensual, Defendant's statements were voluntarily made, and Defendant voluntarily consented to law enforcement searching his luggage. (*Id.* at 6-8). Judge McCarthy also concluded that Defendant consented to the continuation of the encounter with law enforcement at the Harbor Police office in the airport (*id.* at 8-9), but even if the continued encounter was <u>not</u> consensual, at that point

---

[1] This Court ultimately retained disposition of the omnibus pretrial motions, and issued a Decision and Order denying those motions on October 5, 2018. (Dkt. 127).

law enforcement had reasonable suspicion that criminal activity may be afoot so as to justify further investigation pursuant to *Terry v. Ohio*, 392 U.S. 1 (1968) (Dkt. 115 at 9-10). Judge McCarthy further concluded that Defendant's rights under *Miranda v. Arizona*, 384 U.S. 436 (1966), were not triggered based upon the standard set forth in *United States v. Newton*, 369 F.3d 659 (2d Cir. 2004) (Dkt. 115 at 9-12), and that Defendant voluntarily consented to a search of his cell phones (*id.* at 12-13).

Defendant timely filed his Objections to the Report and Recommendation on September 21, 2018. (Dkt. 121). The Government filed its response on October 4, 2018. (Dkt. 126). Oral argument was held before the undersigned on October 11, 2018, and the Court reserved decision. (Dkt. 134).

## **LEGAL DISCUSSION**

### I. STANDARD OF REVIEW

A district court reviews any specific objections to a report and recommendation on a dispositive issue, such as a motion to suppress, under a *de novo* standard. Fed. R. Crim. P. 59(b)(3); *see also* 28 U.S.C. § 636(b)(1)(C) ("A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made."). To trigger the *de novo* review standard, objections to a report and recommendation "must be specific and clearly aimed at particular findings in the magistrate judge's proposal." *Molefe v. KLM Royal Dutch Airlines*, 602 F. Supp. 2d 485, 487 (S.D.N.Y. 2009).

In conducting its *de novo* review, the district court must give appropriate deference to the credibility determinations made by the magistrate judge who conducted an

evidentiary hearing and observed the witness testimony. *See United States v. Raddatz*, 447 U.S. 667, 675-76 (1980) (district court is not required to rehear witness testimony when accepting a magistrate judge's credibility findings); *Cullen v. United States*, 194 F.3d 401, 407 (2d Cir. 1999) (holding that "without an evidentiary hearing, the District Court could not reject the Magistrate Judge's proposed credibility finding"); *United States v. Lawson*, 961 F. Supp. 2d 496, 499 (W.D.N.Y. 2013) ("The Second Circuit has instructed that where a Magistrate Judge conducts an evidentiary hearing and makes credibility findings on disputed issues of fact, the district court will ordinarily accept those credibility findings."); *United States v. Preston*, 635 F. Supp. 2d 267, 269 (W.D.N.Y. 2009) ("The district court, however, may not reject the magistrate judge's credibility findings without conducting an evidentiary hearing at which the district court has the opportunity to observe and evaluate witness credibility in the first instance.").

## II. ANALYSIS

In reaching his conclusions, Judge McCarthy credited the testimony of Deputy Mitchell over Defendant's version of events set forth in his Declaration (*see* Dkt. 50-2), appropriately noting the limits of any ability to assess Defendant's version of events without Defendant's live testimony. (Dkt. 115 at 7 ("I credit Deputy Mitchell's testimony as to how the encounter began and evolved."); *id.* at 8 ("Again, I credit Deputy Mitchell's testimony that, when asked if they could search his bags, defendant handed them over to Deputy Santana voluntarily."); *id.* at 8 ("Again, since defendant did not testify at the hearing, I give this statement less weight than Deputy Mitchell's testimony that defendant voluntarily accompanied the deputies to the office."); *id.* at 12 ("I find Deputy Mitchell's

testimony to be credible.")). Defendant's challenges to Judge McCarthy's conclusions focus on his disagreement with Judge McCarthy's credibility assessments and the fair inferences drawn from the testimony. In other words, to accept the premise of Defendant's objections, this Court would have to credit Defendant's version of events as to how the encounter with law enforcement developed.

This Court has conducted a thorough review of the transcript of Deputy Mitchell's testimony, and concludes that Judge McCarthy fairly and accurately recited the substance of the testimony in his Report and Recommendation. In his Objections, Defendant cites to the speed at which the encounter took place in an effort to contend that Defendant "felt stressed, hurried and rushed," (Dkt. 121-1 at 5), but even accepting Defendant's allegation that the encounter unfolded quickly, that does not transform the consensual encounter into one that was the product of duress or coercion so as to violate Defendant's Fourth Amendment rights. *See United States v. Garcia*, 56 F.3d 418, 422 (2d Cir. 1995) ("So long as the police do not coerce consent, a search conducted on the basis of consent is not an unreasonable search." (citing *Schneckloth v. Bustamonte*, 412 U.S. 218, 228 (1973))).

Similarly, this Court is unpersuaded by Defendant's argument that Judge McCarthy should have accepted the statement in his Declaration that he was physically escorted to the Harbor Police office after the consensual encounter. (*See* Dkt. 121-1 at 6-7). While acknowledging that Defendant stated in his Declaration that Deputy Santana "placed his hand on my shoulder and grabbed my shirt" (Dkt. 50-2 at 2), Judge McCarthy gave that statement less weight than Deputy Mitchell's testimony that Defendant voluntarily accompanied the deputies to the office. (*See* Dkt. 83 at 16-17 (Deputy Mitchell's testimony

that Defendant voluntarily accompanied law enforcement the 100-150 yards to the police office and that Defendant maintained custody of his money and luggage during the trip); *id.* at 59 (Deputy Mitchell testifying on cross-examination about the positioning during the walk to the office)). Neither Judge McCarthy nor this Court have to accept Defendant's allegation in his Declaration about Deputy Santana's alleged physical contact simply because Deputy Mitchell may not have been in a position to observe Defendant and Deputy Santana during the entire trip to the office—particularly where Deputy Mitchell plainly testified that Defendant voluntarily agreed to accompany the officers (*id.* at 16-17), and where Judge McCarthy rejected other allegations in Defendant's Declaration as not credibly reflecting the events of July 20, 2015.

Likewise, Defendant's contention that Deputy Mitchell "is not a credible witness" on the issue of whether Defendant consented to the search of his phones (Dkt. 121-1 at 9), is unconvincing. Deputy Mitchell testified that Deputy Santana asked permission to go through Defendant's cell phones and Defendant consented. (Dkt. 83 at 23; *see also id.* at 83). Judge McCarthy credited this testimony, correctly noting that Defendant's Declaration did "not refute that he provided verbal consent to allow the search of his phones. . . ." (Dkt. 115 at 12).

Thus, based upon its *de novo* review, and consistent with the deference that must be afforded a magistrate judge's credibility determinations, this Court agrees with Judge McCarthy that the initial encounter between Defendant and law enforcement on July 20, 2015, was consensual, Defendant's statements were voluntarily made, and Defendant voluntarily consented to law enforcement searching his luggage. This Court also agrees

that Defendant voluntarily accompanied law enforcement the 100-150 yards to the police office and that Defendant maintained custody of his money and luggage during the trip); *id.* at 59 (Deputy Mitchell testifying on cross-examination about the positioning during the walk to the office)). Neither Judge McCarthy nor this Court have to accept Defendant's allegation in his Declaration about Deputy Santana's alleged physical contact simply because Deputy Mitchell may not have been in a position to observe Defendant and Deputy Santana during the entire trip to the office—particularly where Deputy Mitchell plainly testified that Defendant voluntarily agreed to accompany the officers (*id.* at 16-17), and where Judge McCarthy rejected other allegations in Defendant's Declaration as not credibly reflecting the events of July 20, 2015.

Likewise, Defendant's contention that Deputy Mitchell "is not a credible witness" on the issue of whether Defendant consented to the search of his phones (Dkt. 121-1 at 9), is unconvincing. Deputy Mitchell testified that Deputy Santana asked permission to go through Defendant's cell phones and Defendant consented. (Dkt. 83 at 23; *see also id.* at 83). Judge McCarthy credited this testimony, correctly noting that Defendant's Declaration did "not refute that he provided verbal consent to allow the search of his phones. . . ." (Dkt. 115 at 12).

Thus, based upon its *de novo* review, and consistent with the deference that must be afforded a magistrate judge's credibility determinations, this Court agrees with Judge McCarthy that the initial encounter between Defendant and law enforcement on July 20, 2015, was consensual, Defendant's statements were voluntarily made, and Defendant voluntarily consented to law enforcement searching his luggage. This Court also agrees

with Judge McCarthy that the continuation of Defendant's encounter with law enforcement at the Harbor Police office at the airport was consensual, but even if it was not, law enforcement had reasonable suspicion that criminal activity may be afoot so as to justify further investigation based upon the reasons set forth in the Report and Recommendation. Moreover, the Court agrees with Judge McCarthy that Defendant's rights under *Miranda v. Arizona*, 384 U.S. 436 (1966), were not triggered based upon the standard set forth in *United States v. Newton*, 369 F.3d 659 (2d Cir. 2004), and that Defendant voluntarily consented to the search of his cell phones.

Finally, Defendant contends that even if his detention in the office was a lawful *Terry* stop, its length caused the detention to become an unlawful arrest. (Dkt. 121-1 at 9-10). Initially, the Court rejects this argument because the credible evidence demonstrates that Defendant's interview and detention in the office were entirely consensual. However, even if the encounter in the office constituted a *Terry* stop, the record does not support the conclusion that the encounter was unreasonably delayed while waiting for the narcotics detection canine to arrive to perform a sniff search of the currency. Deputy Mitchell could not recall if they even waited for the dog to arrive to conduct the sniff, but he also testified that at most, it would have taken "[m]aybe 15 minutes, 20 minutes." (Dkt. 83 at 72). At that point during the encounter, the law enforcement officers knew that Defendant, an individual with prior drug trafficking arrests made last minute arrangements to fly to San Diego, a known drug source city (Dkt. 115 at 10); Defendant initially denied his identity to law enforcement (Dkt. 83 at 11); Defendant was nervous, slurring his words, and visibly shaking (*id.* at 13); Defendant had in his possession over $36,000, most of which was

recklessly stashed in the clothing and shoes of his checked luggage (*id.* at 15); and Defendant told the officers that he had travelled to San Diego to purchase "as much high-grade marijuana as I can" (*id.* at 17). Under the circumstances, even if the encounter was delayed for purposes of the dog sniff, law enforcement had reasonable suspicion of criminal activity to justify any delay. *See United States v. Compton*, 830 F.3d 55, 65 (2d Cir. 2016) ("The Fourth Amendment permits a brief extension of a *Terry* stop in order to conduct a canine sniff to resolve suspicions enhanced during the initial stop."); *United States v. $60,020.00 U.S. Currency*, 41 F. Supp. 3d 277, 283-86 (W.D.N.Y. 2011) (rejecting argument that 90-minute delay to wait for arrival of drug-sniffing dog "transformed what was a legitimate investigatory stop into an illegal seizure").

## CONCLUSION

For the foregoing reasons, the Court accepts and adopts the Report and Recommendation. (Dkt. 115). Based upon the reasons set forth above and for the reasons set forth in the Report and Recommendation, Defendant's supplemental motion to suppress (Dkt. 50) is denied.

SO ORDERED.

_____
ELIZABETH A. WOLFORD
United States District Judge

Dated: October 22, 2018
       Rochester, New York