UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK



UNITED STATES OF AMERICA,

v.

RICHARD LUCAS,

        Defendant.

**DECISION AND ORDER**

1:17-CR-00129 EAW

# **INTRODUCTION**

Defendant Richard Lucas ("Defendant") stands accused by way of a one-count Indictment returned on July 11, 2017, with conspiracy to possess with intent to distribute and to distribute 5 kilograms or more of cocaine, in violation of 21 U.S.C. § 846. (Dkt. 18). A jury trial is scheduled to commence on May 14, 2019. (Dkt. 189).

This Decision and Order is intended to memorialize the reasons that the Court finds by a preponderance of the evidence that Defendant is not presently suffering from a mental disease or defect that would render him mentally incompetent to the extent that he would be unable to understand the nature and consequences of the proceedings against him or render him unable to assist properly in his defense. For the reasons set forth below, the Court determines that Defendant is competent to stand trial.

# PROCEDURAL BACKGROUND

On July 11, 2017, a federal grand jury returned a one-count Indictment charging Defendant with conspiracy to possess with intent to distribute and to distribute 5 kilograms or more of cocaine, in violation of 21 U.S.C. § 846. (Dkt. 18). A jury trial was originally scheduled to commence on November 7, 2018. (Dkt. 76). However, the morning of November 7, 2018, defense counsel made an oral motion for a competency hearing. (Dkt. 161). Without objection from the Government, the Court determined that there was reasonable cause for a mental health examination to be conducted. (*Id.*). Accordingly, the trial was adjourned so that an evaluation could proceed.

Defendant was transported to the Federal Bureau of Prisons Federal Medical Center in Ayer, Massachusetts ("FMC Devens"), and underwent a mental health evaluation from December 6, 2018, through January 30, 2019. (Dkt. 182). Forensic psychologist Shawn E. Channell, Ph.D., ABPP, issued a report dated March 27, 2019, in which he offered the following opinions: (1) Defendant has a factual understanding of his legal case and the court process; (2) Defendant's decision-making ability and "unwavering decision to take his case to trial are not the result of a mental illness"; (3) Defendant has a specific way in which he wants his defense to proceed and he avoids discussing his legal case so as not to feel anxious or stressed, which will make working with his attorneys more difficult, but Defendant is "capable of working with them if he chooses to do so"; (4) Defendant is not suffering from a mental disorder which would render him incompetent to the extent that he is unable to

understand the nature and consequences of the proceedings against him or to assist in his defense. (*Id.* at 11-12)[1].

On April 17, 2019, the Court held a conference concerning Defendant's competency. (Dkt. 186). Defense counsel raised concerns regarding Defendant's behavior since a previous status conference held on March 29, 2019, and ultimately indicated that they did not believe Defendant could assist in his own defense. At this conference, the Court requested that the United States Marshal Service ("USMS") obtain information from the medical and mental health providers at the local jail facility where Defendant is being housed.

A competency hearing was held before the undersigned on May 1, 2019. (Dkt. 189). The Court considered Dr. Channell's report, which had previously been entered as part of the record in this case. (Dkt. 182). In addition, the Court marked and entered into evidence two exhibits obtained through the assistance of the USMS: (1) Court Exhibit 1—an email memorializing interactions between Defendant and a nurse at the local jail facility where Defendant is being housed; (2) Court Exhibit 2—an email from the Chief Medical Officer at the Allegany County Sheriff's Office summarizing additional interactions with Defendant. The Court also heard from defense counsel, who expressed the general view that their concerns had been resolved since the appearance on April 17, 2019, and that they had devised a more effective way to communicate with Defendant. Defendant did not present any

---

[1] References to page numbers refer to those generated by the Court's CM/ECF system.

witnesses or exhibits, and neither did the Government. The Court engaged in a colloquy with Defendant at the hearing concerning his ability to understand the nature and consequences of the proceedings against him and to assist in his defense, and at the conclusion of the hearing, the Court indicated that it found Defendant competent and intended to issue a Decision and Order memorializing the reasons for its findings.

## DISCUSSION

### I. Legal Standard

"It is well established that the Due Process Clause of the Fourteenth Amendment prohibits the criminal prosecution of a defendant who is not competent to stand trial." *United States v. Quintieri*, 306 F.3d 1217, 1232 (2d Cir. 2002) (quoting *Medina v. California*, 505 U.S. 437, 439 (1992)). Accordingly, 18 U.S.C. § 4241(a) requires the Court to conduct "a hearing to determine the mental competency of the defendant" where there is "reasonable cause to believe that the defendant may presently be suffering from a mental disease or defect rendering him mentally incompetent to the extent that he is unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense." *Id.* Prior to the hearing date, the Court has the discretion to order that a psychological examination of the defendant be conducted. 18 U.S.C. § 4241(b). A defendant has the right to counsel at a competency hearing, and must be afforded the "opportunity to testify, to present evidence, to subpoena witnesses on his behalf, and to confront and cross-examine witnesses who appear at the hearing." 18 U.S.C. § 4247(d).

After conclusion of the hearing, the Court must determine whether, by a preponderance of the evidence, "the defendant is presently suffering from a mental disease or defect rendering him mentally incompetent to the extent that he is unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense[.]" 18 U.S.C. § 4241(d). If the Court finds in the affirmative, it must then commit the defendant to the custody of the Attorney General, who is in turn required to hospitalize the defendant in a suitable facility to attempt to restore him to competency. *Id.*

"The Supreme Court has set forth a two-prong test for determining competency to stand trial. The defendant must have (1) 'sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding' and (2) 'a rational as well as factual understanding of the proceedings against him.'" *United States v. Nichols*, 56 F.3d 403, 410 (2d Cir. 1995) (quoting *Dusky v. United States*, 362 U.S. 402, 402 (1960)). "In making a determination of competency, the district court may rely on a number of factors, including medical opinion and the court's observation of the defendant's comportment." *Id.* at 411; *see also United States v. Ioulevitch*, 508 F. App'x 73, 75 (2d Cir. 2013) ("We have frequently reiterated that the district court's determination of competency based on its direct observations of the defendant is entitled to deference."). The Court may also take into account any evidence of malingering by the defendant. *See United States v. Bumagin*, 114 F. Supp. 3d 52, 56 (E.D.N.Y. 2015) (finding the defendant competent where, although he had "some degree of dementia," the evidence demonstrated that "malingering [was] the chief reason for the

symptoms" and the defendant was "attempting to avoid trial and, with it, the possibility that he might be found guilty and suffer punishment as a result of that finding of guilt").

"The federal statute providing for competency hearings does not allocate the burden of proof, and neither the Supreme Court nor the Second Circuit has decided whether the Government or defendant bears the burden." *United States v. Ditomasso*, No. 14-CR-160 (SAS), 2015 WL 7758535, at *1 (S.D.N.Y. Dec. 1, 2015).[2] There is a circuit split on this issue: "The Fourth, Seventh, Eighth, and Tenth Circuits place the burden of proof on the defendant, and the Third, Fifth, and Ninth Circuits place the burden of proof on the Government." *Id.* (collecting cases). The Second Circuit has declined to reach the issue, taking the position that "[t]he allocation of the burden of proof to the defendant will affect competency determinations only in a narrow class of cases where the evidence is in equipoise; that is, where the evidence that a defendant is competent is just as strong as the evidence that he is incompetent." *Nichols*, 56 F.3d at 410 (quoting *Medina*, 505 U.S. at 449). This is not such a case, as discussed in detail below, and so the Court need not and does not reach the burden of proof issue.

---

[2] The Supreme Court suggested in dicta in *Cooper v. Oklahoma*, 517 U.S. 348 (1996) that a criminal defendant bears the burden of proof with respect to a claim of incompetency, *see id.* at 361, but has never affirmatively ruled on the issue.

## II. Analysis

The record before the Court does not support the conclusion that Defendant is incompetent to stand trial. Instead, the record shows that Defendant has strong feelings about the appropriate conduct of his trial which has led him to be, at times, less than fully cooperative with his attorneys. The Court credits defense counsel's statements that Defendant has been unwilling to speak with them at times and assist in the preparation of his case. While the Court understands that this can create challenges for defense counsel, it is not evidence of a mental disease or defect that renders Defendant incapable (as opposed to unwilling) to assist in the preparation of his own defense.

The Second Circuit's decision in *United States v. Kerr*, 752 F.3d 2016 (2d Cir. 2014) is instructive. In *Kerr*, the defendant had "ceased communicating with and then effectively fired his two appointed attorneys, insisted on pressing several ill-advised theories of defense to the exclusion of all others, and underwent a court-ordered competency examination that ultimately found him competent to stand trial." *Id.* at 210. Kerr was ultimately assigned new counsel and pled guilty midway through his criminal trial. *Id.* After his guilty plea, he "again refused to communicate with counsel and filed numerous pro se motions in which he sought to withdraw his plea, press his theories of defense, and obtain the assistance of new counsel." *Id.* "At sentencing, Kerr's attorney expressed concern about Kerr's mental stability and represented that Kerr had been unable to help him prepare for sentencing." *Id.* On appeal,

Kerr argued that his post-plea behavior required the district court to hold a competency hearing prior to imposing sentence. *Id.*

The Second Circuit rejected Kerr's arguments, finding that "the district court acted well within its discretion when it declined to order a competency hearing before accepting Kerr's . . . guilty plea." *Id.* at 216. In particular, the *Kerr* court found that the district court was entitled to rely on the earlier forensic report that had found the defendant "competent to understand the proceedings and capable of working with his attorney if he so chose," and that Kerr's post-plea behavior (refusing to cooperate or communicate with his attorneys and becoming preoccupied with "his *pro se* theories of defense to the exclusion of other issues") was "not so erratic that it should have given the district court reason to doubt his competency." *Id.* at 216-217 (quotation omitted); *see also United States v. Smith*, No. 05 CR. 922 (DLC), 2007 WL 1701797, at *1-2 (S.D.N.Y. June 13, 2007), *aff'd*, 348 F. App'x 636 (2d Cir. 2009) (finding defendant competent in spite of his "refusal to consult with [counsel] and assist in the preparation of his defense").

This case has many similarities to *Kerr*. In particular, Dr. Channell's forensic report concluded that Defendant was avoiding discussing his legal case because he "has a specific way in which he wants his defense to proceed," and that he was capable of working with his attorneys if he chose to do so. (Dkt. 182 at 12). The evidence before the Court overwhelmingly supports the conclusion that Defendant has, at times, refused to cooperate with his attorneys not because of mental disease or defect, but because he does not like their

advice that the case against him is strong and because this disagreement with his attorneys has caused him to feel stressed and anxious. "[D]isputes between criminal defendants and their attorneys are not at all uncommon," and the fact that a defendant is "unreasonable, and myopic in his approach to [his] case . . . is not the same as incompetence[.]" *Kerr*, 752 F.3d at 218. As Dr. Channell explained in his forensic report, while Defendant's insistence on proceeding to trial may appear to his counsel to be an objectively poor decision, poor decision-making "is not, in and of itself, a sufficient indicator of mental illness," and Defendant has made this decision "with full awareness of the potential consequences and the risks involved," not as the result of mental illness. (Dkt. 182 at 11-12).

There is also evidence in the record that Defendant is malingering. During the court-ordered psychological examination, Defendant was administered the Minnesota Multiphasic Personality Inventory-2 (the "MMPI-2"), which is a test of personality functioning. (*Id.* at 8). The results of this test indicated that Defendant had "exaggerated the severity of his mental health symptoms," and the "extreme over-reporting of mental health symptoms invalidated the MMPI-2 and no clinical interpretation was possible." (*Id.*).

In addition, the interactions between medical and mental health providers at the local jail facility where Defendant is being housed reflect that Defendant has denied any mental health issues, has declined medication for stress or anxiety, and has failed to take steps to request a visit from a mental health counselor. (*See* Court Ex. 1 & 2). In fact, it was because of intervention by the USMS at the Court's request, that the providers at the jail proactively

met with Defendant to assist him with any mental health concerns. The primary concern expressed by Defendant during these interactions was difficulty sleeping, but he also acknowledged that he was obtaining 6-8 hours of sleep during a 24-hour period, and he had been exercising and drinking coffee right before going to sleep at night.

Finally, the Court's own interactions and observations of Defendant support the conclusion that Defendant is competent. At all times, Defendant has behaved appropriately in court and indicated an understanding of the proceedings and his attorneys' role in connection with the case. While Defendant may understandably be experiencing stress associated with the criminal charges and the prospect of a lengthy sentence if ultimately convicted as charged, that stress does not signify mental incompetence.

In sum, there is no evidence in the record to support the conclusion that Defendant's lack of participation has been because of a mental disease or defect, as opposed to a voluntary decision to, at times, avoid speaking to his attorneys. The record overwhelmingly supports the conclusion that Defendant understands the proceedings against him and that he is not suffering from a mental disease or defect that renders him unable to assist with his defense.

## CONCLUSION

For the foregoing reasons, the Court finds by a preponderance of the evidence that Defendant is not presently suffering from a mental disease or defect that would render him mentally incompetent to the extent that he would be unable to understand the nature and consequences of the proceedings against him or render him unable to assist properly in his

defense. *See* 18 U.S.C. § 4241(d). The Court therefore determines that Defendant is competent to stand trial.

SO ORDERED.

_____
ELIZABETH A. WOLFORD
United States District Judge

Dated: May 6, 2019
Rochester, New York