UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

UNITED STATES OF AMERICA,

v.

RICHARD LUCAS,

            Defendant.

_____

**DECISION AND ORDER**

1:17-CR-00129 EAW

## **INTRODUCTION**

Defendant Richard Lucas ("Defendant") stands accused by way of a one-count Indictment returned on July 11, 2017, with conspiracy to possess with intent to distribute and to distribute 5 kilograms or more of cocaine, in violation of 21 U.S.C. § 846. (Dkt. 18). Defendant was initially charged with co-defendant Dominic Daniels, but Mr. Daniels pleaded guilty on July 19, 2018. (Dkt. 91). Defendant's trial is scheduled to commence on May 14, 2019.

Presently before the Court is Defendant's motion seeking to suppress evidence obtained through a warrant authorized on a cellular telephone used by Mr. Daniels. (Dkt. 176). Because Defendant did not have a privacy interest in Mr. Daniels' cell phone, his Fourth Amendment rights were not implicated, even if the cell phone was tracked by law enforcement into a hotel room being used by Defendant. Accordingly, Defendant's motion is denied.

## BACKGROUND

The background of this matter is set forth in detail in the Court's Decision and Order entered October 5, 2018 (Dkt. 127), familiarity with which is assumed for purposes of this Decision and Order. As a brief summary, on May 15, 2017, Defendant rented Room #113 at the Comfort Inn and Suites Buffalo Airport Hotel located at 901 Dick Road, Cheektowaga, New York 14225 (hereinafter referred to as "the Comfort Suites"). (Dkt. 35-3 at ¶ 3). On that date, Mr. Daniels was surveilled by law enforcement leaving the Comfort Suites with a blue package. Mr. Daniels was subsequently stopped by law enforcement and he had in his possession approximately 794 grams of cocaine, $17,000 in U.S. currency, and a key for Room #113 at the Comfort Suites. (*See* Dkt. 127 at 5-6, 27 n.7).

After Mr. Daniels left the Comfort Suites, Defendant and his 14-year old son arrived at the hotel's parking lot in a black 2017 Corvette. (*Id.* at 6). Law enforcement approached Defendant, ultimately leading to his flight and subsequent arrest. (*Id.* at 7-12). At the time of his arrest, Defendant had in his possession a key to Room #113 at the Comfort Suites. (*See id.* at 45-48).

That same day, Erie County Court Judge Kenneth F. Case signed a search warrant authorizing a search of Room #113 at the Comfort Suites. (Dkt. 44-1 at 5-6). Earlier in the investigation and prior to the search of Room #113, law enforcement obtained a search warrant to obtain real-time cell site location information for telephone number (716) 536-9617, which was possessed by Mr. Daniels. (Dkt. 184-1). The search warrant is signed by

Judge Case and is dated April 17, 2017. (*Id.* at 2). Defendant now contends that "[b]ecause law enforcement was privy to this information, any later investigation of Dominic Daniels, his whereabouts, or the ultimate arrest of defendant Richard Lucas is subject to suppression based upon the officers' derivative use of the said information." (Dkt. 176 at 5). More specifically, Defendant argues that he is entitled to discover[1] the warrant materials authorizing the tracking of Mr. Daniels' cell phone, and that he has standing to suppress evidence obtained through the tracking of the phone, because law enforcement allegedly tracked the phone to Room #113 at the Comfort Suites, a place where Defendant had an expectation of privacy. (*Id.* at 4-5).

## DISCUSSION

### Defendant Lacks Standing to Challenge the Search of Mr. Daniels' Cell Phone

The Fourth Amendment guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. "Fourth Amendment rights are personal rights which . . . may not be vicariously asserted." *Rakas v. Illinois*, 439 U.S. 128, 133-34 (1978) (internal quotations and citations omitted). In other words, "a defendant's Fourth Amendment rights are violated 'only when the challenged conduct invade[s] *his* legitimate expectation of privacy rather than that of a third party.'" *United States v. Santillan*, 902 F.3d 49, 62 (2d Cir. 2018) (quoting *United States*

---

[1] To gain access to the underlying materials in support of the search warrant, Defendant must have a legitimate Fourth Amendment right in the property searched. *See generally United States v. Pirk*, 282 F. Supp.3d 585, 591-592 (W.D.N.Y. 2017).

*v. Haqq*, 278 F.3d 44, 47 (2d Cir. 2002)) (alteration in original), *cert. denied*, No. 18-8213, 2019 WL 1024924 (Apr. 1, 2019); *see also Haqq*, 278 F.3d at 47 ("The cornerstone of the modern law of searches is the principle that, to mount a successful Fourth Amendment challenge, a defendant must demonstrate that he personally has *an expectation of privacy in the place searched*.") (internal quotations and citations omitted). Accordingly, it follows that "[a] person who is aggrieved by an illegal search and seizure only through the introduction of damaging evidence secured by a search of a third person's premises or property has not had any of his Fourth Amendment rights infringed." *Rakas*, 439 U.S. at 134. This principle applies to the search of cell phones. *See United States v. Dore*, 586 F. App'x 42, 46 (2d Cir. 2014) ("As [the defendant] conceded below, he did not submit an affidavit establishing that the cell phones in question belonged to him or that he had a subjective expectation of privacy in them. Nor did [the defendant] assert a privacy interest in the cell phones in some other manner. Consequently, [the defendant] does not have standing to assert Fourth Amendment rights in those phone records.").

Here, Defendant does not contend that he had a privacy interest in the cell phone used by Mr. Daniels. Instead, he argues that he had an expectation of privacy in Room #113 at the Comfort Suites, and that because law enforcement allegedly[2] tracked Mr. Daniels to that hotel

---

[2] It is not at all clear that law enforcement actually tracked Mr. Daniels' cell phone to Room #113, as opposed to more generally the Comfort Suites. Nonetheless, for purposes of resolving Defendant's motion, the Court assumes that law enforcement used a tracking device pursuant to the warrant to track Mr. Daniels to Room #113.

room through his cell phone, Defendant's Fourth Amendment rights were violated. In support of his argument, Defendant relies on *Alderman v. United States*, 394 U.S. 165 (1969), where the United States Supreme Court held that the Fourth Amendment protects a person's private conversations, as well as his premises:

> The rights of the owner of the premises are as clearly invaded when the police enter and install a listening device in his house as they are when the entry is made to undertake a warrantless search for tangible property; and the prosecution as surely employs the fruits of an illegal search of the home when it offers overheard third-party conversations as it does when it introduces tangible evidence belonging not to the homeowner, but to others.

394 U.S. at 179-180. However, the *Alderman* case is inapposite. Law enforcement did not install a listening device in Room #113, nor did they intercept any of Defendant's phone conversations. Instead, law enforcement obtained a warrant to obtain tracking information from Mr. Daniels' cell phone, which allegedly led them to the Comfort Suites.

Defendant also relies on *Kyllo v. United States*, 533 U.S. 27 (2001). In *Kyllo*, the Supreme Court held that evidence obtained through the search of the interior of a residence with technology that is not available to the public—in that case, a thermal imager—constituted an unlawful search. 533 U.S. at 34-35. *Kyllo* is also distinguishable; here, law enforcement simply allegedly obtained location information for Mr. Daniels' phone, rather than information relating to activities occurring inside Room #113. In other words, the tracking information from Mr. Daniels' phone did not reveal to law enforcement any information regarding the contents of or activities happening inside Room #113. *See also*

*United States v. Bermudez*, No. IP 05-43-CR-B/F, 2006 WL 3197181, at *13 (S.D. Ind. June 30, 2006) (distinguishing *Kyllo* on same grounds), *aff'd*, 509 F.3d 820 (7th Cir. 2007).

Defendant's contention regarding his expectation of privacy and the subsequent violation of his Fourth Amendment rights is based on his alleged privacy interest in Room #113. This contention is flawed, particularly because the information Defendant seeks to suppress was not obtained from Room #113; rather, it was collected as a result of a tracking warrant for Mr. Daniels' cell phone, in which Defendant has no expectation of privacy.

The case *United States v. Peters*, 333 F. Supp. 3d 366 (D. Vt. Aug. 10, 2018) is instructive. In *Peters*, the Court addressed whether the government's tracking the cell phone of another person riding in the defendant's vehicle violated the defendant's rights under the Fourth Amendment. The defendant's argument was similar to that raised here; that is, the defendant argued in *Peters* that "evidence obtained by tracking [the passenger's] cell phone, including the traffic stop which resulted in her arrest, is inadmissible against her absent a warrant because she had a reasonable expectation of privacy in her vehicle and her own real-time location information," and "the government must obtain a warrant before private citizens are inadvertently tracked through real-time cell site location information obtained by surveillance of another target."[3] *Id.* at 377. The Court disagreed, and concluded:

> The fact that [the passenger's] cell phone happened to be located in Defendant's vehicle does not render the government's actions unconstitutional. There is no

---

[3] The defendant in *Peters* conceded that she did not have standing to challenge the validity of the warrant authorizing the location monitoring of the passenger's cell phone. *Id.* at 377.

evidence that the government intentionally sought to obtain Defendant's location through the real-time location information pertaining to [the passenger's] phone. Instead, it was pure happenstance that [the passenger] entered Defendant's vehicle as opposed to her home or the vehicle or home of some other individual. There was thus no way the government could predict in advance that it would need a second warrant for Defendant's real-time location if she happened to be in proximity of [the passenger's] cell phone. The approach Defendant advocates is thus wholly unworkable.

Although the government does not dispute that the officers monitoring [the passenger's] location were aware that Defendant was also a target of the same investigation, her status as a person of interest does not materially alter the analysis because the government was not actively tracking her location. Even if the government believed that Defendant might come into contact with the target cell phone, such a belief is immaterial in light of a facially valid warrant authorizing the government to track the phone itself.

Accordingly, even if Defendant possessed a reasonable expectation of privacy in her real-time location information, the government did not violate that expectation and was not required to obtain a second warrant prior to arresting her. Any other conclusion would lead to unworkable and unreasonable results.

*Id.* at 377-78 (internal citations omitted); *see also United States v. Barrera-Barron*, No. 12-20066-22-KHV, 2013 WL 3989182, at *4-6 (D. Kan. Aug. 1, 2013) (the defendant, who was located by law enforcement by their tracking the cell phone for "UM167," did not have standing to challenge the search of UM167's cell phone; the defendant did not have possession of the cell phone or a reasonable expectation of privacy in the GPS data from the phone, the officers never connected the phone to the defendant, and the defendant could not show a subjective expectation of privacy in the phone, as he did not know it existed until his arrest and the phone was not registered to the defendant or to his business); *Bermudez*, 2006 WL 3197181, at *13 ("What was being monitored—namely, a third person's cell phone's

signal—did not implicate any protectible Fourth Amendment interest on the part of [the defendant]. Though the signal originated from within [the defendant's] residence, it was capable of being monitored outside the home. [The defendant] thus lacks a Fourth Amendment privacy interest in the signal and standing to challenge the government's tracking of the target phone. Accordingly, his motion to suppress the tracking and the locating of the cell phone based on a violation of his Fourth Amendment rights must be denied.").

Here, there is no evidence that Defendant had possession of, or any subjective privacy interest in, Mr. Daniels' cell phone. Law enforcement did not observe Defendant using the tracked cell phone, and the cell phone was not registered to Defendant. Nor has Defendant articulated any basis showing that he had an expectation of privacy in the information from Mr. Daniels' cell phone. The fact that the cell phone was allegedly tracked to Room #113 where Defendant happened to have a privacy interest is immaterial. "A defendant bears the burden of proving that he has a legitimate expectation of privacy in an object such that he can claim the protection of the Fourth Amendment in challenging the government's search of that object." *Dore*, 586 F. App'x at 46. Defendant has failed to satisfy this burden as it relates to the search of Mr. Daniels' cell phone, and therefore his motion is denied.

## CONCLUSION

For the foregoing reasons, Defendant's motion (Dkt. 176) is denied.

SO ORDERED.

_____
ELIZABETH A. WOLFORD
United States District Judge

Dated: May 13, 2019
Rochester, New York