UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

UNITED STATES DISTRICT COURT
FILED
SEP 1 3 2019
MARY C. LOEWENGUTH, CLERK
WESTERN DISTRICT OF NY

---

UNITED STATES OF AMERICA,

**DECISION AND ORDER**

v.

1:17-CR-00129 EAW

RICHARD LUCAS,

Defendant.

---

## I.    BACKGROUND

Defendant Richard Lucas ("Defendant") was charged in a one-count Indictment returned on July 11, 2017, with conspiracy to possess with intent to distribute and to distribute 5 kilograms or more of cocaine, in violation of 21 U.S.C. § 846. (Dkt. 18). Defendant was initially charged with co-defendant Dominic Daniels ("Daniels"). The only count in the Indictment (Count 1) read as follows:

> Beginning in or about May 2017, the exact date being unknown, and continuing to on or about May 15, 2017, in the Western District of New York, and elsewhere, the defendants, RICHARD LUCAS and DOMINIC DANIELS, did knowingly, willfully and unlawfully combine, conspire and agree together and with others, known and unknown, to commit the following offenses, that is, to possess with intent to distribute, and to distribute, 5 kilograms or more of a mixture and substance containing cocaine, a Schedule II controlled substance, in violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(A). All in violation of Title 21, United States Code, Section 846.

(*Id*. at 1). Mr. Daniels pleaded guilty on July 19, 2018. (Dkt. 91). A jury trial commenced with respect to Defendant on May 15, 2019. (Dkt. 222). On May 28, 2019, the jury returned

a verdict of guilty with respect to Count 1, although the drug weight the jury attributed to Defendant was less than 5 kilograms of cocaine (but 500 grams or more). (Dkt. 238). Sentencing is scheduled for September 25, 2019. (Dkt. 253).

On July 1, 2019, Defendant filed a motion pursuant to Fed. R. Crim. P. 33 seeking to dismiss the Indictment or alternatively for a new trial. (Dkt. 245). Defendant asserts three arguments in support of his motion: (1) no conspiracy was proven nor did one exist; instead, according to Defendant, at best the Government proved a buy and sell agreement, but not a conspiracy; (2) the Court improperly amended the Indictment by striking Mr. Daniels' name and allowing evidence concerning multiple conspiracies, and then failed to properly instruct the jury with a multiple conspiracies charge; and (3) the Court erred by allowing Special Agent Wisniewski to testify concerning his military service as background information during his direct examination. The Government filed its brief in opposition to Defendant's motion on July 23, 2019. (Dkt. 250).

Familiarity with the underlying facts of the case and procedural history is assumed for purposes of this Decision and Order. The Court has carefully reviewed the issues raised by Defendant and concludes that the motion should be denied for the reasons set forth herein.

## II.    RULE 33 STANDARD

Rule 33 of the Federal Rules of Criminal Procedure allows a court to vacate a judgment and grant a new trial "if the interest of justice so requires." Fed. R. Crim. P. 33(a). In evaluating the sufficiency of the evidence for purposes of Rule 33, the Court "must examine the entire case, take into account all facts and circumstances, and make an objective

evaluation." *United States v. Ferguson*, 246 F.3d 129, 134 (2d Cir. 2001). "The ultimate test on a Rule 33 motion is whether letting a guilty verdict stand would be a manifest injustice." *Id.* "In other words, '[t]here must be a real concern that an innocent person may have been convicted.'" *United States v. Snype*, 441 F.3d 119, 140 (2d Cir. 2006) (alteration in original) (quoting *Ferguson*, 246 F.3d at 134).

"The defendant bears the burden of proving that he is entitled to a new trial under Rule 33. . . ." *United States v. McCourty*, 562 F.3d 458, 475 (2d Cir. 2009). "Because motions for a new trial are disfavored in this Circuit the standard for granting such a motion is strict. . . ." *United States v. Gambino*, 59 F.3d 353, 364 (2d Cir. 1995). A court will grant a new trial only "in the most extraordinary circumstances." *United States v. Locascio*, 6 F.3d 924, 949 (2d Cir. 1993).

## III.    CONSPIRACY V. BUY-SELL AGREEMENT

Defendant contends that, at most, he was involved in a buy-sell agreement, and therefore the evidence does not support the conspiracy conviction. (Dkt. 245 at 10-16). Defendant never raised this defense during trial nor did he request a jury charge on the issue. *See United States v. Lyle*, 919 F.3d 716, 737 (2d Cir. 2019) (where defendant never requested buyer-seller instruction at trial, no plain error "because the government presented ample evidence of a narcotics conspiracy beyond a buyer-seller relationship"). Even if Defendant had raised the issue, it is apparent no rational factfinder could conclude Defendant was just a

buyer of narcotics—rather, the evidence established beyond a reasonable doubt that Defendant was deeply involved in a major cocaine conspiracy.

A.    Legal Standard

"The crux of a conspiracy is an agreement between two or more persons to join together to accomplish something illegal." *Id.* "[U]nless at least two persons have a *shared* purpose or stake in the promotion of an illegal objective, there is no conspiracy." *United States v. Parker*, 554 F.3d 230, 234 (2d Cir. 2009) (emphasis in original). Accordingly, the Court charged the jury that in order to sustain its burden of proof the Government must prove beyond a reasonable doubt the following two elements: (1) the existence of the conspiracy charged in Count 1 of the Indictment—namely, an agreement or understanding to violate federal drug laws making it illegal to distribute, or possess with the intent to distribute, cocaine, and (2) Defendant knowingly became a member of the conspiracy—that is that he knowingly associated himself with and participated in the alleged conspiracy to distribute, or possess with the intent to distribute, cocaine. The jury concluded that the Government met its burden of proof. The jury's verdict is entitled to deference. *See United States v. Rojas*, 617 F.3d 669, 674 (2d Cir. 2010) ("In assessing the sufficiency of the evidence in the context of a conspiracy conviction, 'deference to the jury's findings is especially important . . . because a conspiracy by its very nature is a secretive operation, and it is a rare case where all aspects of a conspiracy can be laid bare in court.'" (alteration in original) (quoting *United*

*States v. Wexler*, 522 F.3d 194, 207 (2d Cir. 2008)). Moreover, the Court agrees that the Government plainly met its burden of proof in this case.

The Second Circuit has recognized "a 'narrow exception' to the conspiracy rule for a transaction between a buyer and seller of drugs." *Lyle*, 919 F.3d at 737. "Under this rule, notwithstanding that a seller and buyer agree together that they will cooperate to accomplish an illegal transfer of drugs, the objective to transfer the drugs from the seller to the buyer cannot serve as the basis for a charge of conspiracy to transfer drugs." *Parker*, 554 F.3d at 234. In other words, a buyer-seller relationship "'[w]ithout more,' is insufficient to establish a conspiracy." *Rojas*, 617 F.3d at 674 (alteration in original) (citation omitted); *see United States v. Brock*, 789 F.3d 60, 63 (2d Cir. 2015) ("[T]he buyer's agreement to buy from the seller and the seller's agreement to sell to the buyer cannot 'be the conspiracy to distribute, for it has no separate criminal object.'"); *United States v. Colella*, 637 F. App'x 625, 626 (2d Cir. 2015) ("In a literal sense, any drug deal constitutes a conspiracy to distribute drugs, regardless of the quantity of drugs sold or of the intentions of the parties to engage in an extended criminal enterprise.").

Of course, the exception does not apply simply because a buyer-seller relationship exists between co-conspirators. *Parker*, 554 F.3d at 235. In other words, the exception "does not protect either the seller or buyer from a charge they conspired together to transfer drugs if the evidence supports a finding that they shared a conspiratorial purpose to advance other transfers, whether by the seller or by the buyer." *Id.*

"The rationale for [the buyer-seller] exception is that, while a drug sale is a substantive crime, it should not be characterized as a conspiracy because it has no separate criminal object." *Rojas*, 617 F.3d at 674 (quotation omitted). "The primary reason for this exception is to avoid imposing the more severe punishments resulting from liability for conspiracy to distribute controlled substances upon individuals who merely buy and possess controlled substances for their own personal use." *United States v. Dove*, 884 F.3d 138, 151 (2d Cir. 2018); *see Colella*, 637 F. App'x at 627 ("Among other reasons [for the buyer-seller exception], penalizing users buying drugs for their own consumption to the same degree as dealers working for criminal enterprises would be inconsistent with federal narcotics laws, which prescribe harsher penalties for dealers than for mere users."); *Parker*, 554 F.3d at 235 ("[I]f an addicted purchaser, who acquired drugs for his own use and without intent to distribute it to others, were deemed to have joined in a conspiracy with his seller for the illegal transfer of the drugs from the seller to himself, the purchaser would be guilty of substantially the same crime, and liable for the same punishment, as the seller.").

"The critical inquiry in each case is whether the evidence in its totality suffices to permit a jury to find beyond a reasonable doubt that the defendant was not merely a buyer or seller of narcotics, but rather that the defendant knowingly and intentionally participated in the narcotics-distribution conspiracy by agreeing to accomplish its illegal objective beyond the mere purchase or sale." *United States v. Hawkins*, 547 F.3d 66, 73-74 (2d Cir. 2008). The Second Circuit has "avoided listing factors to guide what is a highly fact-specific inquiry,"

but it has identified a non-exhaustive list of relevant factors including "whether there was prolonged cooperation between the parties, a level of mutual trust, standardized dealings, sales on credit ('fronting'), and the quantity of drugs involved." *Id.* at 74 (quotation omitted); *see also Rojas*, 617 F.3d at 675 (setting forth a "non-exclusive list of considerations"). "No single factor is dispositive." *Hawkins*, 547 F.3d at 74.

B.  Analysis

Here, Defendant was not involved in a simple buy-sell agreement. Rather, the proof established that Defendant shared a conspiratorial purpose with his seller and others to advance far more transfers than just a simple sale of drugs from the seller to Defendant. Defendant was involved in a highly organized drug distribution operation.

As an initial matter, there was no proof that Defendant was a consumer of drugs (as is often the case with a defendant entitled to the protection of the buy-sell exception). Instead, the evidence at trial established that Defendant was purchasing cocaine in kilogram amounts for distribution.

According to Defendant's statement provided to law enforcement, Ricardo Vega ("Vega"), a supplier from Texas, fronted him 9 kilograms of cocaine a day before Defendant's arrest, and he owed Vega a total of $272,250 for that cocaine. (*See* Govt. Trial Ex. 18). Defendant stated that his relationship with Vega developed from his association with other Texas suppliers, namely Raul Montes, Sr. (*Id.*). The credible evidence established that Defendant and Daniels were distributing the cocaine obtained from Vega to other drug

traffickers in the Buffalo area in wholesale quantities, and at the time of their arrest on May 15, 2017, Defendant and Daniels had established Room #113 at the Comfort Inn and Suites Buffalo Airport Hotel ("Comfort Suites") located at 901 Dick Road in Cheektowaga, New York, as their base of operations.

Vega had a stake in Defendant's operations because he needed Defendant to successfully sell the cocaine so as to pay him the almost $300,000 that was owed. The mutual trust between Vega and Defendant was also demonstrated by the plan to have cocaine delivered by an unknown Mexican male at the Red Roof Inn in Lancaster, New York (with the sale proceeds subsequently retrieved by another unidentified transporter). Similarly, the evidence established the mutually beneficial arrangement between Defendant and Daniels, who both had access to Room #113 where over $30,000 in U.S. currency was kept in the safe. Indeed, Defendant's allegiance to Daniels was displayed by his refusal to discuss his involvement when interviewed by law enforcement.

The totality of the evidence in this case easily supports a finding that Defendant was not merely a buyer or seller of narcotics, but rather he "knowingly and intentionally participated in the narcotics-distribution conspiracy by agreeing to accomplish its illegal objective beyond the mere purchase or sale." *Hawkins*, 547 F.3d at 73-74. The Court has reviewed the decision in *United States v. Garner*, No. 17-CR-49, 2019 WL 2281225 (W.D.N.Y. May 29, 2019), cited extensively by Defendant in his motion, and that decision does not change this Court's analysis. In this case, Defendant was involved in a quintessential

cocaine conspiracy, and his attempts to argue that he was simply a buyer or transferee of cocaine ignores the significant evidence introduced at trial. As a result, there is no risk here that Defendant was wrongly convicted of the conspiracy charge, and his Rule 33 motion on this basis is denied.

## IV.    CLAIMS REGARDING MULTIPLE CONSPIRACIES

Defendant contends that by omitting Daniels name from the Indictment read to the jury, "a variance arose because the evidence at trial could not mesh with those alleged in the indictment returned by a grand jury." (Dkt. 245 at 17). Defendant goes on to argue that "the jury was allowed to hear testimony of more than one alleged conspiracy" through the introduction of evidence outside the time period set forth in the Indictment, and that the Court erred in not providing a requested multiple conspiracies instruction. (*Id.*). Defendant appears to argue that the introduction of pre-May 2017 evidence resulted in both a variance and constructive amendment of the Indictment. (*Id.* at 18-19). Defendant's argument raises a number of issues that the Court will attempt to unravel.

### A.    Legal Standards Applicable to Issues Raised by Defendant

#### 1.    Constructive Amendment

The Second Circuit has explained that "[a] constructive amendment occurs when the charge upon which the defendant is tried differs significantly from the charge upon which the grand jury voted." *Dove*, 884 F.3d at 146.

> [A] defendant raising a claim of constructive amendment must show that "the terms of the indictment are in effect altered by the presentation of evidence and jury instructions which so modify *essential elements* of the offense

charged that there is a substantial likelihood that the defendant may have been convicted of an offense other than that charged in the indictment."

*United States v. Pierce*, 785 F.3d 832, 844-45 (2d Cir. 2015) (quoting *United States v. Vilar*, 729 F.3d 62, 81 (2d Cir. 2013) (emphasis in original). In other words, a constructive amendment occurs when either the proof at trial or the trial court's jury instructions provide a basis not considered by the grand jury for the petit jury to convict. However, as explained by the Second Circuit:

> Not every alteration of an indictment . . . rises to the level of a constructive amendment. For a defendant to prevail on such a claim, he must demonstrate that either the proof at trial or the trial court's jury instructions so altered an *essential element* of the charge that, upon review, it is uncertain whether the defendant was convicted of conduct that was the subject of the grand jury's indictment. An indictment is not constructively amended, however, where a portion of the indictment that is unnecessary for a conviction of the crime charged is removed or altered. Rather, a constructive amendment occurs either where (1) an additional element, sufficient for conviction, is added, or (2) an element essential to the crime charged is altered.

*Dove,* 884 F.3d at 146 (emphasis in original) (citations and quotation omitted). "An alteration of the indictment that does not affect the core elements of the crime is not a constructive amendment." *Id.* at 147.

### 2. Variance

"A variance occurs when the charging terms of the indictment are left unaltered, but the evidence offered at trial proves facts materially different from those alleged in the indictment." *Pierce*, 785 F.3d at 845 (quoting *United States v. Salmonese*, 352 F.3d 608, 621 (2d Cir. 2003)).

> Whereas a defendant alleging a constructive amendment must establish that the evidence or the jury charge on which he was tried broadens the possible bases for conviction beyond the indictment voted on by the grand jury, a defendant alleging a variance must establish that the evidence offered at trial differs materially from the evidence alleged in the indictment.

*Dove*, 884 F.3d at 147. "Although both constructive amendment and variance are based on constitutional concerns, constructive amendment is a *per se* violation of the Grand Jury Clause, while a defendant must show 'substantial prejudice' to warrant reversal on a variance claim." *Pierce*, 785 F.3d at 845 (citation omitted).

A variance occurs in a conspiracy case "[w]hen convictions have been obtained on the theory that all defendants were members of a single conspiracy although, in fact, the proof disclosed multiple conspiracies. . . ." *Id.* (alteration in original) (quoting *United States v. Bertolotti*, 529 F.2d 149, 154 (2d Cir. 1975)).

### 3.    Evidence of Uncharged Criminal Activity

The Second Circuit follows an "inclusionary" approach to evidence admitted under Federal Rule of Evidence 404(b), allowing for the admission of "other crimes, wrongs, or acts" evidence "unless it is introduced for the sole purpose of showing the defendant's bad character or unless it is overly prejudicial under Fed. R. Evid. 403 or not relevant under Fed. R. Evid. 402." *United States v. Pascarella*, 84 F.3d 61, 69 (2d Cir. 1996) (citation omitted). When evidence is admitted pursuant to Rule 404(b), upon request the jury should be instructed "that the similar acts evidence is to be considered only for the proper purpose for which it was admitted." *Huddleston v. United States*, 485 U.S. 681, 691-92 (1988).

On the other hand, evidence of uncharged criminal activity is not considered "other crimes" evidence under Fed. R. Evid. 404(b) "if it arose out of the same transaction or series of transactions as the charged offense, if it is inextricably intertwined with the evidence regarding the charged offense, or if it is necessary to complete the story of the crime on trial." *United States v. Carboni*, 204 F.3d 39, 43 (2d Cir. 2000).

### 4. Multiple Conspiracies

"A single conspiracy exists where the government has shown 'that each alleged member agreed to participate in what he knew to be a collective venture directed toward a common goal.'" *United States v. DeLaRosa*, 700 F. App'x 13, 16 (2d Cir. 2017) (quoting *United States v. Martino*, 664 F.2d 860, 876 (2d Cir. 1981)). Several factors typically are relevant to determining whether a single conspiracy exists "including the overriding goal of the conspiracy; the core group who led the conspiracy; if the individual operations shared common participants; if the individual schemes were independent; and if the participants used distinctive means and methods common among the individual operations." *Id.* at 16-17. "[I]t is not necessary that the conspirators know the identities of all the other conspirators in order for a single conspiracy to be found, especially where the activity of a single person was central to the involvement of all." *United States v. Maldonado-Rivera*, 922 F.2d 934, 963 (2d Cir. 1990) (quotation and citations omitted); *see United States v. Chin*, 534 F.2d 1032, 1035 (2d Cir. 1976) ("The essence of the crime is an agreement, and there is no more reason to say that

a supplier of narcotics is necessarily engaged in two conspiracies because he has two sources of supply than there would be because he had two purchasers.").

Under certain circumstances, it is appropriate to give a multiple conspiracies charge. "The main purpose of a 'multiple conspiracies' instruction is to avoid any '"spill over effect" of permitting testimony regarding one conspiracy to prejudice the mind of the jury against the defendant who is not part of that conspiracy but another.'" *United States v. Ulbricht*, No. 14-cr-68 (KBF), 2015 WL 413426, at *1 (S.D.N.Y. Feb. 2, 2015) (quoting *United States v. Restrepo*, 547 F. App'x 34, 40 (2d Cir. 2013)). "This instruction is thus appropriate in a multiple-defendant case where 'there is a legitimate concern that a defendant who operated on the periphery of a large, overarching conspiracy will be unfairly grouped in with a larger conspiracy than he intended to join.'" *Id.* (quoting *United States v. Richardson*, 532 F.3d 1279, 1291 (11th Cir. 2008)).

"[I]n order to secure a reversal for a failure to give a requested multiple-conspiracy charge, a defendant must show both that there was evidence of separate networks operating independently of each other and that he suffered substantial prejudice resulting from the failure to give the requested charge." *Maldonado-Rivera*, 922 F.2d at 962-63 (quotations omitted). "A refusal to give a multiple conspiracy charge does not prejudice defendant where there was ample proof before the jury for it to find beyond a reasonable doubt that defendant was a member of the conspiracy charged in the indictment." *United States v. Vazquez*, 113 F.3d 383, 386 (2d Cir. 1997); *see United States v. Cusimano*, 123 F.3d 83, 89 (2d Cir. 1997)

("A showing of 'substantial prejudice' requires the defendant to prove that the evidence in support of the conspiracy or conspiracies in which he did not participate prejudiced the case against him with respect to the conspiracy to which he was a party.").

A multiple conspiracy charge is typically unnecessary "where the indictment charges only one defendant who is at the hub of the conspiracy." *Ulbricht*, 2015 WL 413426, at *1 (quoting *Richardson*, 532 F.3d at 1291). In the case of a single defendant, "there is no danger of any 'spill over effect,' since the defendant is alleged to have participated in all conspiratorial conduct." *Id.* As a result, "[c]ourts in the Second Circuit have consistently found that a 'multiple conspiracies' charge is unnecessary in the trial of a single defendant." *Id.* (collecting cases); *see United States v. Reid*, 732 F. App'x 14, 16 (2d Cir. 2018) ("A defendant who is indicted and tried alone . . . cannot suffer substantial prejudice from a district court's failure to issue a multiple-conspiracies instruction, even if conduct charged as a single conspiracy in the indictment in fact constituted two separate conspiracies in which the defendant was involved."), *cert. denied*, 139 S. Ct. 252 (2018); *United States v. Corey*, 566 F.2d 429, 431 n.3 (2d Cir. 1977) ("[S]ingle/multiple conspiracy analysis does not apply to the trial of a single defendant."); *Chin*, 534 F.2d at 1035 ("We have been cited to no case which involves only one defendant and where a claim of multiple conspiracies has been sustained."). In other words, it is generally more difficult to make a showing of substantial prejudice "where, as here, the trial was a short trial involving a single defendant." *Cusimano*, 123 F.3d at 89; *see also* Modern Federal Jury Instructions 19-5, Comment ("Generally speaking, the

[multiple conspiracy] instruction is appropriate in cases where a number of defendants have been collectively charged in the indictment with participation in a single, overall conspiracy, but where there is a basis for the defense claim that multiple conspiracies existed. Case law suggests that the recommended charge is not appropriate in the trial of a single defendant.").

B.     Analysis of Defendant's Claims

In support of his claim of a variance, Defendant challenges the omission of Daniels' name from the Indictment and the introduction of pre-May 2017 evidence. (Dkt. 245 at 16-20). Defendant also contends that the introduction of the pre-May 2017 evidence resulted in a constructive amendment of the Indictment. (*Id.* at 19). The Court notes that Defendant does not contend that the omission of Daniels' name constituted a constructive amendment to the Indictment. Indeed, any such claim would be without merit since the identity of one's co-conspirators is not an essential element of the offense charged. *See Dove*, 884 F.3d at 147-48 (specific names of co-conspirators were not a necessary element of offense and therefore the trial court's omission of the names from the jury charge did not constitute a constructive amendment of indictment); *United States v. Redd*, 116 F.3d 1472, 1997 WL 346147, at *1 (2d Cir. 1997) (table decision) (on plain error review, "easily" concluding that there was no constructive amendment when the district court omitted co-defendant's name when reading indictment to the jury); *see also United States v. Ray*, 899 F.3d 852, 865-866 (10th Cir. 2018) (no constructive amendment occurred where trial judge replaced name of defendant's wife who had pleaded guilty with phrase "another person," noting that "[i]t is common practice at

trial to omit from an indictment information that's no longer relevant to the offenses—such as counts related to a codefendant who previously pleaded guilty"), *cert. denied, Ray v. United States*, 139 S. Ct. 1206 (2019); *United States v. Monserrate-Valentin*, 729 F.3d 31, 62 (1st Cir. 2013) (district court did not err in instructing jury that it had to find the agreement specified in the indictment "existed between at least two people" as opposed to the other named conspirators); *United States v. Johnson*, 719 F.3d 660, 668 (8th Cir. 2013) ("Because the identity of a defendant's coconspirators is not an essential element of conspiracy, the district court's failure to include the names of the coconspirators in the jury instructions was not a constructive amendment of the indictment." (citation omitted)); *United States v. Whiteford*, 676 F.3d 348, 361 (3d Cir. 2012) (omitting names of co-conspirators who were not on trial from jury instructions was proper).

Defendant's contention that the conspiracy proved at trial was somehow different than the one charged in the Indictment lacks merit. The credible evidence established beyond a reasonable doubt that during the time frame in the Indictment (beginning in or about May 2017, the exact date being unknown, and continuing to on or about May 15, 2017) in the Western District of New York, and elsewhere, Defendant conspired with Daniels, Vega, and others, to possess with intent to distribute, and to distribute, cocaine. Defendant's arguments that Daniels' involvement was not established to be part of the proven conspiracy ignores the credible evidence offered at trial. Defendant arrived at the Comfort Suites where Daniels had just recently left carrying a blue bag with cocaine. Both Defendant and Daniels had keys to

Room #113 in their personal possession, where approximately $33,490 was stored in a safe. Upon being approached by law enforcement, Defendant abandoned his teenage son and fled— ultimately being apprehended as he was running through traffic. Defendant was interviewed by law enforcement and admitted to his role in major cocaine trafficking, although he refused to talk about Daniels. In sum, the evidence established that Defendant and Daniels had a partnership to distribute wholesale quantities of cocaine obtained from the Texas-supplier, Vega. And this is plainly the conspiracy found by the jury, as evidenced by their decision to determine Defendant's drug quantity based on the amount of drugs possessed by Daniels at the time of his arrest (as opposed to the amount of drugs that Defendant admitted he had received).

With respect to evidence introduced involving events prior to May 2017,[1] the Court allowed the Government to introduce evidence of Defendant using an alias to travel to Texas in January 2017, evidence of Defendant's December 2016 involvement with cocaine trafficking at a Pilot truck stop in Pennsylvania, and Defendant's renting of a storage locker at Life Storage located at 1275 Sheridan Drive in Tonawanda, New York. The evidence was not introduced to prove that Defendant was involved in some conspiracy other than the one charged in the Indictment. Rather, the Court concluded that this evidence was admissible—

---

[1]    To the extent Defendant is contending that he did not have notice of this evidence, there is no support for that contention in the record. The Court agrees with the Government that Defendant was fully aware of this evidence through discovery and pretrial motion practice. (*See* Dkt. 250 at 15 n.2).

not as other crimes evidence under Rule 404(b)—but rather as relevant background information pertaining to the charged conspiracy. Even though the Indictment charged a conspiracy occurring during May 2017, evidence of events occurring prior to that date was relevant to proving the charged conspiracy. *See United States v. Edwards*, 723 F. App'x 48, 49-50 (2d Cir. 2018) (district court did not abuse its discretion in admitting evidence of defendant's cocaine dealing as direct evidence of the charged heroin conspiracy where evidence showed relationship between and among the defendant and other witnesses), *cert. denied, Arreola v. United States*, 139 S. Ct. 1220 (2019); *United States v. Morillo-Vidal*, 547 F. App'x 29, 30-31 (2d Cir. 2013) (evidence that defendant was involved in uncharged 2009 drug conspiracy was relevant background information and therefore not considered other crimes evidence under Rule 404(b) as it explained relationship with co-conspirator and knowledge of co-conspirator's role in national drug conspiracy); *United States v. Romero-Padilla*, 583 F.3d 126, 130 (2d Cir. 2009) (proof that defendant and co-conspirator were involved in another uncharged scheme to transport narcotics to the United States was relevant background evidence that corroborated the charges in the indictment).

Here, for instance, the evidence of Defendant's cocaine trafficking in December 2016 corroborated the veracity of his confession to law enforcement in May 2017. It also demonstrated Defendant's connection to Raul Montes, Sr., which was important because it was the basis for Defendant's introduction to Vega, from whom he obtained the cocaine in May 2017. Similarly, Defendant's travel to Texas in January 2017, using an alias, was direct

evidence of his relationship with his sources of cocaine. Finally, the evidence of drug trafficking from the evidence seized from the storage locker corroborated Defendant's confession that he was involved in major cocaine trafficking.

There was no basis for a multiple conspiracies charge in this case. This case did not involve "separate networks operating independently of each other." *Maldonado-Rivera*, 922 F.2d at 962 (quotation omitted). Moreover, even if Defendant's pre-May 2017 activities constituted evidence of a conspiracy different than the one charged in the Indictment, Defendant was at the hub of any other conspiracy. Thus, there was no spill over prejudice. In fact, the Court instructed the jury that evidence of events occurring prior to the time period charged in the Indictment was introduced as background evidence, but reminded the jury that Defendant was on trial only for the crime charged in the Indictment and not for any acts outside the scope of that alleged conspiracy. Put simply, Defendant was properly convicted of the conspiracy charged in the Indictment, and his claims otherwise lack merit.

## V.   AGENT WISNIEWSKI'S MILITARY SERVICE

DEA Special Agent Christopher Wisniewski was the final witness presented by the Government as part of its case-in-chief. Among other things, Agent Wisniewski testified concerning the interview that he conducted of Defendant after his arrest on May 15, 2017. From the start of the case—during the opening statement—the defense challenged the accuracy of the statements attributable to Defendant during that interview—contending that this so-called "lynch pin" evidence should have been videotaped, questioning why the

interview took place at the county sheriff's offices versus DEA headquarters, and arguing that Defendant was in distress during the interview and it made no sense for him to make the alleged admissions. Indeed, even now, Defendant continues to challenge the credibility of Agent Wisniewski's testimony. (*See* Dkt. 245 at 15).[2]

At the commencement of his direct testimony, after being asked about his tenure with the DEA and educational background, Agent Wisniewski was asked: "Now, have you also served in the military?" (Dkt. 260 at 4). Defense counsel objected to that question, which the Court overruled, and Agent Wisniewski responded: "Yes." (*Id.*). Then, Agent Wisniewski was asked a follow-up question, *to which no objection was raised*: "Can you tell the jury about your military experience?" (*Id.*). In response to that follow-up question, Agent Wisniewski testified without objection as follows:

> I enlisted at 17 years old the International Guard, that is a reserve branch of the Air Force. My first tour of duty, I served as a munitions specialist, which is, basically, I built bombs for the Air Force. My organization fell under a maintenance squadron. That was the organization responsible for fixing the bombs and putting them together and maintaining specialized equipment, the aircraft, that sort of thing. And then I changed careers. I went into security forces, which is basically the unit, the branch of the Air Force that is responsible for law enforcement on the installation as well as defending the air base from attacks. Then I became an OSI Special Agent, it's the Air Force Office of Special Investigations. And then from there, I took a commission and I became an Army officer and transferred to the Army and I became a JAG . . . and judge advocate general as a JAG or lawyer for the military. And then I served a

---

[2]     As it did during the suppression hearing in this case, *see United States v. Lucas*, 338 F. Supp. 3d 139, 145 (W.D.N.Y. 2018), the Court found Agent Wisniewski to be a credible witness. That conclusion was based on his demeanor on the witness stand and the content of the testimony when viewed with respect to the other evidence in the case. The Court's conclusion had nothing to do with his military service.

combat tour in Iraq and I came back and stayed with the Army for a few more
years and transferred back to the blue to the 107 in Niagara Falls and I'm the
staff JAG Officer for the 107th.

(*Id.* at 4-5). The questioning then immediately moved to the investigation of Defendant.

Agent Wisniewski later referenced during his direct examination his familiarity with the band

saw equipment observed in Defendant's storage locker as a result of his military service.

Other than the foregoing, there was no other reference during the trial to Agent Wisniewski's

military service.

In support of his Rule 33 motion, Defendant contends that a new trial is warranted

because admission of Agent Wisniewski's military service, and more specifically his combat

deployment, was improper. (Dkt. 245 at 20-23). Defendant contends that the testimony was

improper character evidence intended to bolster Agent Wisniewski's credibility. (*Id.* at 21).

On the other hand, Defendant concedes that testimony concerning Agent Wisniewski's

experience with the Air Force in aircraft maintenance was proper foundation testimony with

respect to the band saw observed in the storage locker rented by Defendant. (*Id.* at 21 n.7).

Thus, it seems as though the crux of Defendant's complaint concerns Agent Wisniewski's

testimony that he served a combat tour in Iraq.

"[T]he trial court is entitled to wide discretion concerning the admissibility of

background evidence." *United States v. Blackwell*, 853 F.2d 86, 88 (2d Cir. 1988) (holding

that testimony concerning the defendant's service in the Marine Corps "was properly received

as background"). The Federal Rules of Evidence define "relevant evidence" as evidence

having "any tendency to make a fact more or less probable than it would be without the evidence" and "the fact is of consequence in determining the action." Fed. R. Evid. 401. Although "[e]vidence which is essentially background in nature can scarcely be said to involve disputed matter, . . . it is universally offered and admitted as an aid to understanding." *Blackwell*, 853 F.2d at 88 (alteration in original) (quoting Advisory Committee's notes to Rule 401). Thus, it is well within a trial court's discretion to allow testimony concerning a witness' background, including military service, as part of an introduction of the witness to the jury. *Id.*; *see, e.g.*, *Bird v. West Valley City*, No. 2:12-cv-00903, 2019 WL 1406614, at *7 (D. Utah Mar. 28, 2019) (collecting cases where military service was properly introduced as background information); *Najera v. City of Anaheim*, No. 8:16-cv-01243-JLS-JCG, 2018 WL 6039870, at *4 (C.D. Cal. July 23, 2018) (questioning of defendant concerning military service properly admitted as relevant background information); *United States v. Deel*, No. 1:09CR00022, 2010 WL 519836, at *1 (W.D. Va. Feb. 11, 2010) ("While military service or disability is not admissible as character evidence in this case, I will allow a defendant who testifies to give a brief and straight-forward recitation of his life history, including employment and family details, simply as background evidence for the jury's benefit to judge his credibility." (footnote omitted)); *Wells v. Davis*, No. 05-CV-0811-DRH, 2009 WL 3352642, at *2 (S.D. Ill. Oct. 16, 2009) (denying plaintiffs' motion *in limine* to preclude evidence of military service record of defendants on ground that evidence is relevant background information); *cf. United States v. Solomon*, 686 F.2d 863, 873-74 (11th Cir. 1982)

(trial court did not abuse discretion in not allowing defendant to answer question about prior military service).

Here, the only question to which an objection was lodged pertaining to Agent Wisniewski's military service was whether he had served in the military, to which he answered in the affirmative. It was well within the Court's discretion to allow this question and answer as part of general background information pertaining to Agent Wisniewski—he was a significant witness, particularly with respect to alleged admissions made by Defendant concerning his cocaine trafficking, and therefore it was appropriate for the jury to have this general background information.

With respect to the question and answer where more specific details of the military service was elicited, no objection was lodged with respect to that question. Moreover, even Defendant concedes that some of the information elicited in response to that question was properly admitted (*e.g.*, the information concerning Agent Wisniewski's work in aircraft maintenance). (Dkt. 245 at 21 n.7). Furthermore, with respect to the combat tour reference, even if an objection had been raised, a trial court is well within its discretion in allowing this testimony as background information under the circumstances. Agent Wisniewski was not asked about and did not testify about awards or commendations that he had received as part of his military service—which could be problematic. *See United States v. Nazzaro*, 889 F.2d 1158, 1168 (1st Cir. 1989) (declining to "upset" district court's ruling prohibiting defendant from offering into evidence proof of military commendations); *United States v. Brown*, 503

F. Supp. 2d 239, 242-44 & n.4 (D.D.C. 2007) (distinguishing between fact of defendants'
military service which is properly admitted as background information and awards and
commendations which are more akin to character evidence in the form of specific instances
of conduct). Rather, Agent Wisniewski described in narrative form the litany of roles that he
had served in the military—part of which Defendant concedes was relevant—and which
included a brief reference to a combat tour.

Finally, even if the question at issue had been properly objected to, and even if it was
error for Agent Wisniewski to testify that he served a combat tour in Iraq, the reference was
fleeting, and it was never revisited during the proof or closing arguments. Moreover,
Defendant's attempt to equate this testimony with the jury knowing the military background
of the attorneys involved in the trial (Dkt. 245 at 22) is nonsensical—the attorneys were not
witnesses in this case whose credibility needed to be assessed by the jury. As a result, even
if an error, the introduction of the testimony would not constitute "manifest injustice" so as
to justify a new trial under Rule 33.[3]

---

[3]     As the Government points out, the jury found Defendant guilty of a smaller drug
quantity as opposed to the over 5 kilograms as testified to by Agent Wisniewski. (Dkt. 250
at 16). Defendant even goes so far as to contend that "the jury totally disregarded the
statements attributed to Mr. Lucas after his arrest." (Dkt. 245 at 14). This undermines
Defendant's argument that Agent Wisniewski's testimony about his military service unduly
influenced the jury.

## VI.  **CONCLUSION**

For the foregoing reasons, Defendant's motion pursuant to Fed. R. Crim. P. 33 (Dkt.

245) is denied.

SO ORDERED.

_____
ELIZABETH A. WOLFORD
United States District Judge

Dated:  September 13, 2019
          Rochester, New York