UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

RICHARD LUCAS,

                    Petitioner,

          v.

UNITED STATES OF AMERICA,

                    Defendant.

---

**DECISION AND ORDER**

1:17-cr-00129 EAW
1:23-cv-00223 EAW

## I.     <u>INTRODUCTION</u>

*Pro se* petitioner Richard Lucas ("Petitioner" or "Defendant") has filed a motion pursuant to 28 U.S.C. § 2255, seeking to vacate, set aside, or correct his sentence. (Dkt. 335).[1] The government has filed a response in opposition to the petition. (Dkt. 339). For the following reasons, the petition is denied.

## II.     <u>BACKGROUND</u>

Petitioner was charged by indictment on July 11, 2017, with one count of conspiracy to possess with intent to distribute, and to distribute, five kilograms or more of cocaine, in violation of 21 U.S.C. § 846. (Dkt. 18). The indictment also charged Petitioner's co-defendant, Dominic Daniels. (*Id.*). Daniels pleaded guilty (Dkt. 91; Dkt. 92; Dkt. 106), but Petitioner elected to proceed to trial.

---

[1]     All references to the docket in the instant Decision and Order are to the docket in Criminal Action No. 1:17-CR-00129 EAW.

Petitioner's trial commenced on May 17, 2019. (Dkt. 224). The government's evidence against Petitioner was overwhelming and established that Petitioner was involved in a kilogram-level cocaine distribution conspiracy. Petitioner and Daniels were distributing cocaine obtained from an individual named Ricardo Vega, to other drug traffickers in the Buffalo area in wholesale quantities, and at the time of their arrest on May 15, 2017, Petitioner and Daniels had established Room 113 at the Comfort Inn and Suites Buffalo Airport Hotel ("Comfort Suites"), located at 901 Dick Road in Cheektowaga, New York, as a base of operations. On May 15, 2017, Petitioner arrived at the Comfort Suites where Daniels had recently departed carrying a blue bag with cocaine. A search of Daniels' vehicle, which was stopped shortly after leaving the Comfort Suites, uncovered approximately 794 grams of cocaine located within a blue bag (along with a hotel key to Room 113 and cash).

Both Petitioner and Daniels had keys to Room 113 in their personal possession, where approximately $33,490 was stored in a safe. Upon being approached by law enforcement, Petitioner abandoned his teenage son and fled. Petitioner ran down Genesee Street, where he tried to open the doors of several vehicles in an apparent carjacking effort, and he was ultimately apprehended as he was running through traffic. Petitioner provided a statement to law enforcement that Vega, a supplier from Texas, fronted him nine kilograms of cocaine the day before Petitioner's arrest, and Petitioner owed Vega a total of $272,250 for that cocaine.

Other evidence at trial demonstrated that Petitioner used an alias to travel to Texas in January 2017, Petitioner's December 2016 involvement with cocaine trafficking at a

Pilot truck stop in Pennsylvania, and Petitioner's renting of a storage locker at Life Storage located at 1275 Sheridan Drive in Tonawanda, New York.

On May 28, 2019, the jury found Petitioner guilty of the charge in the indictment, including that Petitioner was responsible for less than five kilograms of cocaine, but 500 grams or more of cocaine.  (Dkt. 238).  Petitioner was sentenced on November 13, 2019, to 300 months imprisonment, followed by eight years of supervised release.  (Dkt. 279).

Petitioner filed a notice of appeal.  (Dkt. 283; Dkt. 286).  On appeal, Petitioner challenged the following: (1) denial of his motions to suppress evidence; (2) the striking of Daniels' name from the indictment as a constructive amendment of the indictment; (3) the admission of evidence pertaining to Petitioner's prior involvement in uncharged narcotics distribution activity; and (4) the application of the "career offender" sentencing enhancement under United States Sentencing Guideline ("U.S.S.G.") § 4B1.1(a).  (Dkt. 333 at 2-3; *see also* Dkt. 335 at 2).  By mandate issued on November 16, 2021, the Second Circuit dismissed the appeal.  The Second Circuit rejected Petitioner's argument regarding application of the career offender enhancement.  *See United States v. Lucas*, No. 19-3937-cr, 2021 WL 3700944 (2d Cir. Aug. 20, 2021):

> Defendant contends that his 2003 conviction under N.Y. Penal Law § 220.16(1) was broader than its federal counterpart in two respects, which, if correct, would demonstrate that the 2003 conviction was not a "controlled substance offense" under U.S.S.G. § 4B1.2.  First, Defendant argues that in 2015, naloxegol was removed from the federal drug schedule but was still criminalized by New York under the definition of "narcotic drug," meaning that, by the time he was sentenced in 2019, the state and federal schedules were no longer a categorical match.  Second, Defendant argues—in a Fed. R. App. P. 28(j) letter filed subsequent to his opening brief, but approximately three weeks before the Government filed its responsive brief—that the federal drug schedule, which defines "cocaine" as including

"geometric" and "optical" cocaine isomers, 21 C.F.R. §§ 1300.01(b), 1308.12(b)(4), has always diverged from the New York schedule, which defines cocaine as including its isomers without specifying specific isomer categories, N.Y. Pub. Health L. § 3306.

We conclude that the district court did not plainly err in failing to consider either of these theories for disqualifying Defendant's 2003 conviction as a predicate offense for "career offender" status. The first argument, relating to the state and federal schedules' different treatment of naloxegol, presents an unsettled question of law: whether to adopt a "time-of-conviction approach" by which we compare the state and federal schedules at the time of Defendant's predicate conviction, or a "time-of-sentencing" approach by which we compare the state and federal schedules as they existed at the time of the sentence challenged on appeal. Because our Circuit has not provided a clear answer to this unsettled question—indeed, this very question, involving the different treatment of naloxegol between the New York and federal schedules, is currently before this Circuit in other cases, including *United States v. Gibson*, No. 20-3049—we cannot say the district court plainly erred in failing to adopt the "time-of-sentencing" approach that would have here produced a favorable result to Defendant. *See, e.g.*, *United States v. Weintraub*, 273 F.3d 139, 152 (2d Cir. 2001) ("For an error to be plain, it must, at a minimum be clear under current law." (internal quotation marks omitted)).

Defendant's second argument, relating to the apparently different listing of cocaine isomers between the two schedules, relies entirely on a district court opinion decided *after* Defendant's sentence was imposed in this case. *See* Def.'s Reply Br. at 27-28 (citing *United States v. Fernandez-Taveras*, 511 F. Supp. 3d 367 (E.D.N.Y. 2021)). And, similarly to Defendant's naloxegol argument, how to interpret New York's less specific definition of cocaine (as compared to the federal schedule) presents an unsettled question of law currently pending before this Circuit in other cases, including *United States v. Johnson*, No. 19-4071. Given the unsettled nature of the questions relevant to Defendant's argument, we cannot conclude the district court plainly erred in concluding that Defendant's 2003 conviction was for a "controlled substance offense," notwithstanding the definition of cocaine in the federal and state drug schedules.

*Id*. at *4-5. Petitioner's application for certiorari to the United States Supreme Court was

denied. 142 S. Ct. 1395 (Mar. 21, 2022).

- 4 -

Petitioner filed the instant motion to vacate pursuant to § 2255 (Dkt. 335), as well as a motion to expand the record, attaching an affidavit submitted by Daniels (Dkt. 336). The government responded to the motion to vacate on May 9, 2023.  (Dkt. 339).  Petitioner filed supplemental replies in further support of the petition.   (Dkt. 344; Dkt. 345). Thereafter, Petitioner filed a motion for leave to file a supplemental amendment to the motion to vacate, purporting to rely on newly discovered evidence, which was entered on the Court's docket on November 13, 2025.  (Dkt. 358).   The government filed a response to Petitioner's motion to amend on December 11, 2025 (Dkt. 361), and Petitioner filed a reply on January 27, 2026 (Dkt. 366).

## III.    DISCUSSION

Petitioner raises three grounds for relief in his motion to vacate, including: (1) the court misclassified Petitioner as a career offender at sentencing; (2) trial counsel was ineffective for not challenging his career offender designation at sentencing; and (3) counsel was ineffective for failing to investigate and call co-defendant Daniels at trial. (Dkt. 335 at 4-6).  In response, the government argues that the Second Circuit addressed Petitioner's claims relating to his career offender designation on appeal and therefore any such argument is foreclosed, and also that Petitioner's attorneys were not ineffective.  (Dkt. 339 at 10-19).

### A.    Legal Standard

A prisoner in federal custody may challenge the validity of his sentence by filing a petition for a writ of habeas corpus, pursuant to 28 U.S.C. § 2255, to vacate, set aside, or correct his sentence.  *See* 28 U.S.C. § 2255(a).  "Section 2255 provides relief in cases where

the sentence: (1) was imposed in violation of the U.S. Constitution or the laws of the United States; or (2) was entered by a court without jurisdiction to impose the sentence; or (3) exceeded the maximum detention authorized by law; or (4) is otherwise subject to collateral attack." *Adams v. United States*, 372 F.3d 132, 134 (2d Cir. 2004) (citing 28 U.S.C. § 2255).

In reviewing a *pro se* petition for habeas corpus, the Court must be mindful that "[a] document filed *pro se* is to be liberally construed, and a *pro se* [pleading], however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (internal quotations and citations omitted); *see also Williams v. Kullman*, 722 F.2d 1048, 1050 (2d Cir. 1983) ("[D]ue to the *pro se* petitioner's general lack of expertise, courts should review habeas petitions with a lenient eye. . . .").

Under Section 2255, a district court must hold a hearing "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b). Whether to hold a hearing is within the district court's discretion. *Chang v. United States*, 250 F.3d 79, 86 (2d Cir. 2001). "To warrant a hearing, the motion must set forth specific facts supported by competent evidence, raising detailed and controverted issues of fact that, if proved at a hearing, would entitle him to relief." *Gonzalez v. United States*, 722 F.3d 118, 131 (2d Cir. 2013).

## B.    <u>Career Offender Designation</u>

Petitioner's first argument is that the Court misclassified him as a career offender at sentencing, and therefore his sentence "constitutes a complete miscarriage of justice."

- 6 -

(Dkt. 335 at 4, 19; Dkt. 344 at 2). Specifically, Petitioner states that one of the convictions relied on by the Court to make him a career offender was not a "controlled substance offense," within the meaning of U.S.S.G. § 4B1.2(b). He cites *United States v. Gibson*, 55 F.4th 153 (2d Cir. 2022), where the Second Circuit held that the defendant's 2002 New York conviction for third-degree attempted criminal sale of a controlled substance did not qualify as a controlled substance offense under the career-offender Guideline, since the New York drug schedules were broader than their federal counterparts at the time of the defendant's sentencing. (*Id*. at 21). As referenced above, Petitioner raised this argument before the Second Circuit on his direct appeal, and the Second Circuit rejected it— including because it was a question of unsettled law at the time of Petitioner's appeal. In response, the government argues that Petitioner is procedurally barred from raising this argument because the Second Circuit addressed it on Petitioner's direct appeal. (Dkt. 339 at 10).

The law of the case doctrine "ordinarily forecloses relitigation of issues expressly or impliedly decided by the appellate court." *United States v. Becker*, 502 F.3d 122, 127 (2d Cir. 2007) (quoting *United States v. Quintieri*, 306 F.3d 1217, 1229 (2d Cir. 2002)). "Applying this general principle, we have held that section 2255 may not be employed to relitigate questions which were raised and considered on direct appeal. Nevertheless, application of the doctrine remains a matter of discretion, not jurisdiction." *Id.* (quotations and citations omitted). For example, a court "may find it appropriate to reconsider an earlier decision when we are confronted with 'an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest

injustice.'" *Id.* (citation omitted). Relatedly, "[i]t is well established that a § 2255 petition cannot be used to relitigate questions which were raised and considered on direct appeal. If [a defendant] thus raises an issue that was dealt with on direct appeal, he will be procedurally barred from proceeding with the challenge. Reconsideration is permitted only where there has been an intervening change in the law and the new law would have exonerated a defendant had it been in force before the conviction was affirmed on direct appeal." *United States v. Sanin*, 252 F.3d 79, 83 (2d Cir. 2001) (citations and quotations omitted).

The conviction at issue is Petitioner's conviction on December 11, 2003, in Supreme Court, New York County, New York, for a violation of New York Penal Law § 220.16(1), for criminal possession of a narcotic drug in the third degree. (*See* Dkt. 167 at 1). *Gibson* did not involve the same New York statute, but it concerned a prior conviction for N.Y. Penal Law § 220.39(1), which criminalizes the sale of a narcotic drug in the third degree (as opposed to mere possession). *Gibson*, 55 F.4th at 167. Given the Court's determination in *Gibson* that the defendant's New York conviction for third-degree attempted sale of a controlled substance was not categorically a controlled substance offense under the career-offender Guideline, had Petitioner been sentenced today, he would not have been determined to be a career offender, since his 2003 New York conviction for criminal possession of a narcotic drug in the third degree would not have qualified as a controlled substance offense. Petitioner's position is that, now that the *Gibson* case has been decided—determining that the "time-of-sentencing" approach is appropriate—the Court is

justified in revisiting this issue and by concluding that his sentence amounts to a miscarriage of justice.

"[D]istrict courts evaluating Section 2255 challenges based on a miscalculation of or change in the Guidelines have found that sentencing errors do not constitute a miscarriage of justice." *Brown v. United States*, No. 16-CR-297 (AMD), 2025 WL 1582257, at *5 (E.D.N.Y. May 30, 2025) (collecting cases), *appeal filed*, No. 25-1552 (2d Cir. June 23, 2025). In *Brown*, the court considered the petitioner's argument that he was entitled to resentencing since, pursuant to *Gibson*, his prior conviction under New York law did not qualify as a predicate conviction for career offender status. *Id*. at *3. The court rejected the petitioner's argument for several reasons, including: petitioner's sentence, even without the career offender enhancement, was still within the advisory Guidelines range; courts evaluating Section 2255 challenges based on a miscalculation of the Guidelines have found that sentencing errors do not constitute a miscarriage of justice; and the sentencing Guidelines are advisory, not mandatory, and other factors separate and apart from the career offender Guideline justified the petitioner's sentence. *Id*. at *4-5; *see also United States v. Hoskins*, 905 F.3d 97, 103, 106 (2d Cir. 2018) (reversing district court's conclusion that vacatur of the defendant's state conviction, which made him a career offender, constituted a miscarriage of justice, and explaining that "[e]ven if [the defendant] could no longer be deemed a career offender after his Vermont conviction was vacated, that does not mean the continued imposition of his 112-month sentence was a miscarriage of justice," and "the determinative question on a § 2255 sentence challenge is not whether the original sentence was based on a Guidelines range that subsequent events rendered

- 9 -

inapplicable, but whether maintenance of the sentence in light of those events manifests a complete miscarriage of justice"). Further, "[o]ther circuit courts have held that 'an incorrect career-offender enhancement under the advisory guidelines is not cognizable under § 2255 because it is not a fundamental defect that inherently results in a complete miscarriage of justice.'" *Brown*, 2025 WL 1582257, at *5 (citing cases from the Third, Sixth, Fourth, Eleventh, Seventh, and Eighth Circuits).

Here, Plaintiff has failed to meet the high bar of demonstrating that his sentence constitutes a miscarriage of justice.[2] Petitioner does not argue that his Guidelines calculation was incorrect at the time of his sentencing. Other than pointing to his 2003 New York drug conviction, which would no longer qualify as a controlled substance offense under the Guidelines, Petitioner offers no further argument as to why his 300-month sentence constitutes a miscarriage of justice. As the Second Circuit has instructed, the Guidelines range is "advisory, not mandatory." *Hoskins*, 905 F.3d at 104. In other words, the Court was not bound to sentence Petitioner to a particular sentence because he was a career offender. And in fact, here, the Court acknowledged this fact at sentencing

---

[2]    Nor could Petitioner succeed in challenging his sentence based on an intervening change in the law. "[I]t is well-settled that once a matter has been decided adversely to a defendant on direct appeal it cannot be relitigated in a collateral attack," and "[r]econsideration is permitted only where there has been an intervening change in the law and the new law would have exonerated a defendant had it been in force before the conviction was affirmed on direct appeal." *Chin v. United States*, 622 F.2d 1090, 1092 (2d Cir. 1980) (quotations and citations omitted). In other words, Petitioner "must show that there is new law which, when applied to [his] claims, would result in a different disposition." *Id*. Petitioner cannot meet this demanding standard. Whether Petitioner was sentenced as a career offender is irrelevant to Petitioner's conviction for conspiracy to distribute cocaine.

(*see* Dkt. 315 at 41 (explaining that the Guidelines are no longer mandatory, but rather are advisory)), and imposed a sentence that was 60 months below the bottom of the career offender Guidelines range of 360 months to life. (*See id*. at 42 (discussing that with an offense level of 37, and a criminal history category of 6, the Guidelines would recommend a prison sentence of 360 months to life); *id*. at 53 ("I've considered all of the 3553(a) factors, Mr. Lucas, as well as all of the other reasons that I explained on the record. And I do find, based on my consideration of all of those factors, that a sentence below the Guideline range but not significantly below the Guideline range would be appropriate in this case.")).

As discussed at sentencing, the Court carefully considered the Section 3553(a) factors in imposing Petitioner's prison sentence, including: the evidence at trial demonstrated that Petitioner was motivated by "pure and simple greed," including that he was driving a $100,000 corvette and was wearing $70,000 in jewelry at the time of his arrest; Petitioner was a major drug trafficker, and notwithstanding his prior convictions, his drug trafficking became more sophisticated as he got older; he brought multiple kilograms of cocaine into the Buffalo area; his criminal history dated back to the age of 15, and he was consistently involved in drug trafficking, including when under court supervision for a prior conviction; Petitioner was a "serial drug trafficker"; and his high risk of recidivism. (*Id*. at 43-47). The Court further considered the facts of Petitioner's arrest on May 15, 2017, including that when approached by law enforcement, Petitioner rapidly escalated the situation, fleeing from police and attempting to break into other

vehicles while running through traffic—putting both his own son and the public at risk. (*Id*. at 47-48).

In other words, as discussed at sentencing, and as evidenced by the fact that the Court varied downward from the 360-months-to-life prison sentence recommended by the Guidelines, the 300-month prison sentence imposed by the Court is justified, regardless of whether the career offender enhancement applies. For those reasons, Petitioner cannot demonstrate that application of the career offender Guideline constitutes a complete miscarriage of justice.

### C. Ineffective Assistance of Counsel

Petitioner next asserts that he is entitled to habeas relief based on ineffective assistance of counsel. (Dkt. 335 at 5-6). Specifically, Petitioner alleges that counsel was ineffective because (1) trial counsel failed to challenge his career offender designation at sentencing by arguing that his N.Y. Penal Law § 220.16(1) conviction was not a "controlled substance offense" under the Guidelines, and (2) counsel failed to investigate and call co-defendant Daniels as a witness at trial. (*Id*.). In response, the government argues that Petitioner cannot establish that his trial attorneys' performance was ineffective and, even if he could, he is unable to demonstrate that he suffered the required prejudice under the *Strickland* test. (Dkt. 339 at 12-19).

"The Sixth Amendment requires effective assistance of counsel at critical stages of a criminal proceeding." *Lafler v. Cooper*, 566 U.S. 156, 165 (2012). "Pursuant to the well-known two-part test of *Strickland v. Washington*, 466 U.S. 668 (1984), a habeas petitioner alleging ineffective assistance of counsel 'must demonstrate (1) that his counsel's

performance fell below what could be expected of a reasonably competent practitioner; and (2) that he was prejudiced by that substandard performance.'" *Woodard v. Chappius*, 631 F. App'x 65, 66 (2d Cir. 2016) (quoting *Pearson v. Callahan*, 555 U.S. 223, 241 (2009)).

In assessing the first prong—counsel's performance—"a reviewing court must judge [the attorney's] conduct on the basis of the facts of the particular case . . . and may not use hindsight to second-guess his strategy choices." *Weingarten v. United States*, 865 F.3d 48, 53 (2d Cir. 2017) (quotations and citation omitted). Notably, "[j]udicial scrutiny of counsel's performance must be highly deferential," since "[i]t is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable." *Strickland*, 466 U.S. at 689. With respect to the latter prong, "a defendant suffers prejudice if there is a reasonable probability that his reliance on counsel's ineffective assistance affected the outcome of the proceedings." *Pham v. United States*, 317 F.3d 178, 182 (2d Cir. 2003).

Petitioner cannot demonstrate that his attorneys' performance was deficient by their failure to challenge his career offender designation at sentencing. "The Supreme Court long ago made clear that the Sixth Amendment does not require counsel to raise every non-frivolous argument a client requests." *Weingarten*, 865 F.3d at 53. "A reviewing court must therefore evaluate an attorney's performance in light of the state of the law at the time of the attorney's conduct," and "[c]ounsel is not required to forecast changes in the governing law." *Id.* (quotations and citation omitted). "However, a petitioner may establish constitutionally inadequate performance if he shows that counsel omitted

significant and obvious issues while pursuing issues that were clearly and significantly weaker." *Mayo v. Henderson*, 13 F.3d 528, 533 (2d Cir. 1994).

Petitioner cites *United States v. Townsend*, 897 F.3d 66 (2d Cir. 2018), in support of his argument that his trial attorneys were ineffective. In *Townsend*, the Second Circuit held that the defendant's prior New York conviction under N.Y. Penal Law § 220.31, for criminal sale of a controlled substance in the fifth degree, was not a predicate "controlled substance offense" under the Guidelines, because § 220.31 criminalized the sale of a substance not criminalized under federal law; in other words, that the state statute was broader than its federal counterpart. *Id*. at 74. However, Petitioner was not convicted of § 220.31—rather, he was convicted under § 220.16(1), and the law both at the time of Petitioner's sentencing in 2019, and following his sentencing, was that his New York controlled substances conviction under N.Y. Penal Law § 220.16(1) qualified as a controlled substance offense. *See, e.g.*, *United States v. Robinson*, 958 F.3d 151, 155 (2d Cir. 2020) (determining that the defendant's conviction under N.Y. Penal Law § 220.16(1), for attempted criminal possession of a controlled substance, qualified as a "controlled substance offense" under the Guidelines); *Mann v. United States*, No. 18-14629 (ES), 2021 WL 6049809, at *5 (D.N.J. Dec. 21, 2021) (denying motion to vacate, and explaining that "Section 220.16(1) clearly prohibits the possession of a controlled substance, i.e., 'a narcotic drug,' with the intent to distribute, *i.e.*, sell it," and "[t]hus, Petitioner's New York state law conviction qualifies as a controlled-substance predicate under Section 4B1.2(b) of the guidelines"); *Martinez v. United States*, No. 14-CR-79, 2020 WL 435364, at *5 (W.D.N.Y. Jan. 28, 2020) (attorney was not ineffective for advising the petitioner that he

qualified as a career offender under the Guidelines, and explaining that "before and after *Mathis*, a violation of New York Penal Law § 220.16(1) was and is a controlled substance offense under the Guidelines"). As explained above, counsel is not required to forecast changes in the governing law, and the state of the law did not change until at the earliest three years after Petitioner's November 2019 sentencing, when the Second Circuit decided *Gibson* in December 2022 and determined that the drug schedules should be reviewed at the time of sentencing.[3]

Petitioner next contends that counsel was ineffective because they failed to interview and call Daniels, who Petitioner characterizes as a "potential exculpatory witness." (Dkt. 335 at 32). "The decision whether to call any witnesses on behalf of the defendant, and if so which witnesses to call, is a tactical decision of the sort engaged in by defense attorneys in almost every trial." *United States v. Smith*, 198 F.3d 377, 386 (2d Cir. 1999 (citation omitted). "Actions or omissions by counsel that might be considered sound trial strategy do not constitute ineffective assistance," and therefore "counsel's decision as to whether to call specific witnesses—even ones that might offer exculpatory evidence—is ordinarily not viewed as a lapse in professional representation." *United States v. Best*, 219 F.3d 192, 201 (2d Cir. 2000) (quotations and citations omitted); *see also Aller v. United States*, No. 11 Civ. 9089(TPG), 2015 WL 1963611, at *7 (S.D.N.Y. Apr. 30, 2015)

---

[3]     And to be clear, *Gibson* did not involve a prior conviction under N.Y. Penal Law § 220.16(1), which issue does not appear to have been directly decided by the Second Circuit until *United States v. Johnson*, No. 19-4071-CR, 2023 WL 4752305 (2d Cir. July 26, 2023).

("Strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable, and even strategic choices made after less than complete investigation do not amount to ineffective assistance—so long as the known facts made it reasonable to believe that further investigation was unnecessary." (citation omitted)), *aff'd*, 646 F. App'x 21 (2d Cir. 2016).

Petitioner has failed to demonstrate that not calling Daniels amounted to a lapse in professional representation.  Petitioner offers no explanation as to what exculpatory information Daniels would have testified—rather, he states in conclusory fashion that Daniels was a "potentially exculpatory" witness.  Given that Daniels pleaded guilty to the charged conspiracy, defense counsel may have understandably concluded that his testimony would have been harmful to Petitioner's case.  Petitioner submits in connection with his motion to vacate a "motion to expand the record," with an attached "Affidavit Stating Facts on Information and Belief," signed by Daniels and dated December 19, 2022. (Dkt. 336).  The statement provides that on the evening of May 15, 2017, when Daniels went to the Comfort Suites, he "never met with nor seen Lucas, [he] never had access to nor went to room 113 nor is that where [he] obtained [his] drugs from," and that his account "can all be shown through [the] hotel security camera system."  (*Id.*).  The fact that Daniels stated, almost three years after the trial of this matter, that he never met with Lucas at the Comfort Suites, does not amount to exculpatory information—and in fact, the evidence at trial was that on May 15, 2017, Petitioner arrived at the Comfort Suites where Daniels *had just recently left*—not that they met at the Comfort Suites.  And the statement that Daniels

did not have access to Room 113 is not consistent with the finding of a hotel key for that room in Daniels' vehicle (which he admitted to as part of his plea agreement).[4]

Further, given the voluminous incriminating evidence received by the jury at trial—including Petitioner's admissions to law enforcement of his involvement in a drug trafficking conspiracy and that nine kilograms of cocaine had just been fronted to him—he is unable to demonstrate prejudice. *See, e.g., Rodriguez v. United States*, 767 F. App'x 160, 164 (2d Cir. 2019) (denying claim for ineffective assistance of counsel because there was no prejudice, based on "the amount of evidence describing Petitioners' drug dealing"); *Jackson v. United States*, No. 13 Civ. 3262 (PGG) (GWG), 2016 WL 6938527, at *6 (S.D.N.Y. Nov. 28, 2016) ("[A] court is permitted to take into account the evidence against a defendant in deciding if the outcome of the trial would have been different but for his attorney's performance."), *appeal dismissed*, 2018 WL 1637959 (2d Cir. Mar. 13, 2018). Accordingly, Petitioner is not entitled to habeas relief on this basis.

### D.    **Petitioner's Motion to Amend**

In November 2025, years after his conviction became final, Petitioner filed a motion for leave to amend his motion to vacate, based on "newly discovered evidence." (Dkt. 358 at 1). In his motion, Petitioner states that "federal court filings, appellate rulings, and October 2025 media investigations," reveal that certain officers who investigated and

---

[4]    Pursuant to his plea agreement, Daniels admitted to leaving the Comfort Suites with a blue bag; that when his vehicle was stopped by law enforcement it revealed approximately 750 grams of cocaine in the blue bag, a hotel key for Room 113 at the Comfort Suites that was rented by Petitioner, and approximately $17,000 in U.S. currency; and that when Room 113 was subsequently searched approximately $40,000 U.S. currency was seized. (*See* Dkt. 91 at 3).

testified in Petitioner's case "engaged in a continuous pattern of fabricating evidence, falsifying warrant affidavits, and committing perjury before, during, and after Petitioner's 2017-2019 prosecution." (*Id*. at 2). Petitioner points specifically to the following: (1) a Second Circuit decision from a 2016 prosecution, *United States v. Willis*, in which the Second Circuit found that Detective Carney's testimony given in that case was "implausible and unreliable"; (2) a 2025 decision by Hon. Richard J. Arcara, Senior United States District Judge, in *United States v. Burgin*, wherein Judge Arcara concluded that Chief Daniel "D.J." Granville's unit committed "egregious and deliberate violations of constitutional rights"; and (3) 2025 news coverage of "Granville's team staging evidence and filing false reports," that Granville was "placed on the Erie County Brady list," and also that Granville pleaded guilty to criminal charges for a hit-and-run. (*Id*. at 4-5). Petitioner maintains that several witnesses who testified at his trial "were members of Granville's unit during the systemic misconduct," including Detective Patrick McMahon, Detective Adam Day, Detective Daniel Milbrandt, Detective Carney, Detective Tim Donovan, and Detective Thomas Webb. (*Id*. at 6).

The government filed a response to the motion on December 11, 2025, taking the position that Petitioner's motion to amend is beyond the one-year statute of limitations period, and his new claims do not share a "common core of operative facts" with the claims in his original motion. (Dkt. 361). Petitioner filed a reply on January 27, 2026, largely reiterating the arguments raised in his motion to amend, and also arguing that contrary to the government's arguments, his proposed amendments share a "common core of operative facts," since they both center on counsel's failure to investigate Daniels and the officers'

false claims about Daniels.  (*See* Dkt. 366).  He asks that the Court grant the motion to amend, appoint counsel, and vacate his conviction.  (*Id*. at 8).

The Court agrees with the government that the amendment would be futile, since the claims are untimely under 28 U.S.C. § 2255(f)(1), and they do not relate back to the claims in the original motion to vacate.  Further, Petitioner has not established that he is entitled to the later limitations start date as prescribed in § 2255(f)(4), which allows for the one-year limitations period to run from "the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence."

The Court begins with the fact that Petitioner's motion to amend was filed after the one-year limitations period included in § 2255.  Pursuant to 28 U.S.C. § 2255(f)(1), a motion to vacate must be brought within one year from the date that the petitioner's conviction becomes final.  Here, Petitioner's conviction became final on March 21, 2022, when the United States Supreme Court denied his petition for a writ of *certiorari*.  *See Lucas v. United States*, 142 S. Ct. 1395 (Mar. 21, 2022).  Petitioner had one year from that date, using the default start-date in § 2255(f)(1), to file his motion to vacate.  Under the prison mailbox rule, the motion to vacate was filed on the date Petitioner signed it and gave it to prison officials for mailing—March 8, 2023 (Dkt. 335 at 12).[5]  Petitioner's motion to amend (Dkt. 358) was filed on November 6, 2025, the date on his certificate of service (*id*.

---

[5]   The government's position that the § 2255 was filed on March 14, 2023 (*see* Dkt. 361 at 1), the date it appeared on the Court's docket, is incorrect and ignores the prison mailbox rule.

at 16)—961 days after the one-year statute of limitations expired on March 21, 2023.[6] Accordingly, using the one-year statute of limitations in § 2255(f)(1), Petitioner's motion to amend is untimely and should be denied, unless he can show that the proposed new claims "relate back" to the claims in the original motion to vacate.

"An amendment to a pleading has a clear connection to the original pleading when the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out in the original pleading." *Gibson v. Artus*, 407 F. App'x 517, 519 (2d Cir. 2010) (quotations, citation, and alteration omitted). As raised by the government in its response papers (Dkt. 361 at 3-4), the proposed new claims do not relate back to the original claims which, as explained above, involve sentencing errors and ineffective assistance of counsel, including based on Petitioner's attorneys' failure to argue that he was not a career offender and their decision not to call Daniels as a witness at trial. Petitioner's proposed new claims relate to testimony provided by various detectives, and evidence submitted, at the suppression hearings and at trial. Indeed, Petitioner asserts that the proposed new claims are based on newly discovered evidence of police misconduct, and therefore logically they cannot rely on the same conduct, transaction, or occurrence asserted in the original motion to vacate. Accordingly, Petitioner's amendment is barred, unless another time limitation applies.

Petitioner relies on § 2255(f)(4) which, as explained above, provides the limitations period for newly discovered evidence. (*See* Dkt. 358 at 3). "Where a petitioner relies on

---

[6]    Again, the government incorrectly states that the motion to amend was filed on the day it was entered on the Court's docket, November 13, 2025. (Dkt. 361 at 2).

newly discovered evidence, the statute of limitations period runs 'when the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence . . . regardless of whether petitioner actually discovers the relevant facts at a later date.'" *Matera v. United States*, 83 F. Supp. 3d 536, 546 (S.D.N.Y. 2015) (citation omitted). Section 2255(f)(4) "does not require the maximum feasible diligence, only 'due,' or reasonable, diligence," and "it is the Petitioner's burden to demonstrate why he was unable to discover the factual predicate of his claim before the date asserted." *Id*. (citations, quotations, and alteration omitted); *see also United States v. Pollard*, 416 F.3d 48, 55 (D.C. Cir. 2005) ("[F]or the purposes of § 2255[f](4), time begins when the prisoner knows (or through diligence could discover) the important facts, not when the prisoner recognizes their legal significance." (quotations, citation, and alteration omitted)).

"Congress did not provide a definition of the term 'factual predicate,' as used in § 2244(d)(1)(D),"[7] but "[t]hose courts that have given meaning to the term agree that a

---

[7]    28 U.S.C. § 2244(d)(1) provides the parallel one-year statute of limitations period for state court habeas corpus petitions. The language in 2244(d)(1)(D) is virtually identical to the language in 28 U.S.C. § 2255(f)(4). *Cf.* 28 U.S.C. § 2244(d)(1)(D) ("A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of . . . the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence."), *with* 28 U.S.C. § 2255(f)(4) ("A 1-year period of limitation shall apply to a motion under this section. The limitation period shall run from the latest of . . . the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence."); *see also McCloud v. United States*, 987 F.3d 261, 265 n.11 (2d Cir. 2021) ("Our sister Circuits have held that intervening developments in case law do not create new facts within the meaning of § 2255(f)(4)—or within the meaning of a similar provision in 28 U.S.C. § 2244(d)(1)(D), which permits a statute of limitations to run from 'the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.'").

factual predicate consists only of the 'vital facts' underlying the claim." *Rivas v. Fischer*,

687 F.3d 514, 535 (2d Cir. 2012).  As explained by the Second Circuit:

> [I]f new information is discovered that merely supports or strengthens a claim that could have been properly stated without the discovery, that information is not a "factual predicate" for purposes of triggering the statute of limitations under § 2244(d)(1)(D).  *See McAleese*, 483 F.3d at 214 (observing that the petitioner had "confused the facts that make up his claims with evidence that might support his claims"); *Escamilla v. Jungwirth*, 426 F.3d 868, 871 (7th Cir. 2005) ("Section 2244(d)(1)(D) does not restart the time when corroborating evidence becomes available; if it did, then the statute of limitations would fail in its purpose to bring finality to criminal judgments, for any prisoner could reopen the judgment by locating any additional fact."); *Flanagan*, 154 F.3d at 199 (noting that petitioner "is confusing his knowledge of the factual predicate of his claim with the time permitted for gathering evidence in support of that claim").  Furthermore, it should go without saying that a factual predicate must consist of *facts*. Conclusions drawn from preexisting facts, even if the conclusions are themselves new, are not factual predicates for a claim.

*Id*.  "The determination of the date on which the factual predicate for a habeas claim is first

discoverable is a 'fact-specific' inquiry which requires a district court to analyze the factual

bases of each claim and to determine when the facts underlying the claim were known, or

could with due diligence have been discovered."  *Id*. at 534.

According to Petitioner, the "newly discovered evidence" is what he describes as

the "timeline of systematic misconduct" by various detectives involved in his criminal

proceedings (Dkt. 358 at 4), which he argues is as follows: the beginning of the *Willis* case

in November/December 2016, and *United States v. Willis*, 14 F.4th 170 (2d Cir. 2021),

wherein the Second Circuit found Detective Carney's testimony to be "implausible and

unreliable"; in 2017-2019, Petitioner's investigation, arrest, and trial; in February 2020, the

beginning of the *United States v. Burgin* case (months after Petitioner's trial); in 2025,

when Judge Arcara found "egregious, deliberate, and systemic constitutional violations" by Chief Granville's unit [in *Burgin*]; and in October 2025, when the Channel 2 (WGRZ) and Channel 7 (WKBW) investigations "expose full pattern with video evidence." (Dkt. 358 at 4; *see also id*. at 12 (arguing that "[t]he limitation period under § 2255(f)(4) began when October 2025 reports made evidence public and discoverable")).

The Court turns first to the *Willis* case, and whether the Second Circuit's 2021 decision can serve as the start date for a claim under § 2255(f)(4). Although the criminal prosecution in *Willis* occurred in 2016—prior to Petitioner's prosecution—the Second Circuit's decision was not issued until September 20, 2021, which was after Petitioner was convicted. The Second Circuit called Detective Carney's testimony about his and Detective Granville's actions "implausible," *Willis*, 14 F.4th at 189, but the Circuit did not describe it as "unreliable," contrary to Petitioner's assertion. In any event, the Circuit did not find that any of the detectives committed perjury or misconduct. Moreover, Petitioner's claim that the prosecutor in his case had knowledge of Carney's "implausible" testimony is not supported by the record, including because the basis for describing the testimony as "implausible" was a Second Circuit decision issued *two years after* the 2019 jury verdict in Petitioner's case. Further, even if the *Willis* decision could provide a start-date for purposes of § 2255(f)(4), it would not help Petitioner, since well more than one year passed after the issuance of *Willis* in September 2021, and Petitioner's motion to amend the § 2255 motion, was filed in November 2025. *See, e.g., Matera*, 83 F. Supp. 3d at 546 ("Where a petitioner relies on newly discovered evidence, the statute of limitations period runs 'when the facts supporting the claim or claims presented could have been

discovered through the exercise of due diligence . . . regardless of whether petitioner actually discovers the relevant facts at a later date.'"); *see also Youngblood v. Greiner*, No. 97 Civ. 3289, 1998 WL 720681, at *4 n.4 (S.D.N.Y. Oct. 13, 1998) ("[The newly discovered evidence AEDPA limitations period] runs from the date a petitioner is on notice of the facts which would support a claim, not from the date on which the petitioner has in his possession evidence to support his claim.'" (citing *Flanagan v. Johnson*, No. 97-10912, 1998 WL 556280, at *3 (5th Cir. Sept. 1, 1998)).

With respect to Judge Arcara's decision in the *Burgin* case, this decision also cannot serve as the start date for a claim under § 2255(f)(4). Petitioner does not indicate the precise decision upon which he is relying, but the Court assumes that he is referring to Judge Arcara's May 29, 2025 Decision and Order adopting Magistrate Judge Schroeder's Report and Recommendation that the search warrant in that case be suppressed. The Court has reviewed Judge Arcara's decision, and while Judge Arcara found that the officers in that case, including Granville, conducted an illegal search of a second-floor premises and that the evidence should be excluded because law enforcement, including Granville, acted recklessly and with gross negligence for the defendant's Fourth Amendment rights, he did not make any express credibility findings with respect to Granville. *See United States v. Burgin*, No. 20-CR-29-A, 2025 WL 1527033, at *15 (W.D.N.Y. May 29, 2025) (explaining that the Magistrate Judge did not make any "explicit credibility findings" with respect to Granville, but noting it was clear that he disbelieved or disagreed with Granville's explanations regarding the execution of the search warrant). Further, Judge Arcara's finding does not establish that Granville, Carney, or any of the other officers who testified

- 24 -

in Petitioner's criminal case, either at the suppression hearing or at trial, perjured themselves or violated Petitioner's constitutional rights.

Turning to the investigative reports aired in October 2025 by WGRZ and WKBW, the date of these reports also cannot be used as the start date for a claim under § 2255(f)(4). According to Petitioner, the television stations released surveillance footage showing Chief Granville's team staging evidence and filing false reports, and exposed Detective McMahon for lying under oath about using "white-out" to alter a search warrant. In addition, Petitioner states that Granville was placed on the Erie County *Brady* list, and that he pleaded guilty to criminal charges in connection with a hit-and-run, thereby "evidencing disregard for law and accountability." (*See* Dkt. 358 at 5). However, there is no suggestion that these media reports or the released surveillance footage relate to Petitioner's criminal case. Rather, the media investigations occurred long after the events forming the basis for the case against Petitioner. Other than Petitioner's conclusory assertions, he points to no evidence that any officer committed misconduct during the investigation of the case against him.[8] Courts have "decline[d] to adopt a rule that might require courts to reopen every case in which a corrupt officer testified regardless of whether the corruption extended to that case." *Smallwood v. Martin*, 525 F. App'x 669, 675 (10th

---

[8] For example, Petitioner points to a "fabricated flight," insinuating that the testimony that he fled from officers at the Comfort Suites was fabricated. (*See* Dkt. 358 at 7). But Petitioner's fleeing from the Comfort Suites was confirmed by independent evidence, including a video that captured Petitioner's flight, culminating with him being struck by a vehicle.

Cir. 2013). Accordingly, none of the information identified by Petitioner would constitute "facts" supporting any of the proposed new claims in the motion to amend.

Finally, even if the police misconduct in these unrelated cases could constitute "facts" for purposes of § 2255(f)(4), then Petitioner, acting with reasonable diligence, could have discovered them no later than the Second Circuit's decision in *Willis* in 2021, and he would have had one year to file the motion to amend his motion to vacate, or until September 20, 2022. *Marciano v. Dotson*, No. 2:24cv304, 2024 WL 4849108, at *4 (E.D. Va. Oct. 17, 2024) (noting that additional facts merely supporting a previously known argument are not vital facts), *adopted*, 2024 WL 4847362 (E.D. Va. Nov. 20, 2024). In other words, Petitioner could have amended his Petition following the decision in *Willis* in 2021—but he did not.[9]

In conclusion, because the proposed new claims are untimely under § 2255(f)(1) and do not relate back to the originally pleaded claims, and because Petitioner is not entitled

---

[9]    The undersigned presided over Petitioner's trial, and Petitioner's attorneys challenged law enforcement's version of events even during the trial, including raising issues with respect to how law enforcement knew that the key recovered from Daniels was the key for room 113, whether law enforcement actually observed Daniels enter room 113, and whether Daniels was carrying a blue bag at the time he entered the room. (*See, e.g.*, Dkt. 318 at 88-92; *see also* Dkt. 309 at 93-94 (defense counsel questioning Deputy Milbrandt about his observations of Daniels entering the hotel, including that he did not see Daniels enter a specific room); Dkt. 319 at 114-16 (defense counsel questioning Detective McMahon as to how he knew the keys recovered from Daniels would access room 113); *see also* Dkt. 318 at 33-36 (defense counsel questioning Agent Wisniewski about differing testimony he gave regarding whether he asked Petitioner about his son during Petitioner's post-arrest interview)). In other words, even during the trial and in advance of Petitioner's filing his motion to vacate, Petitioner had information to challenge law enforcement's version of events as fabricated. And despite raising these issues, a jury still found Petitioner guilty.

to a later start date under § 2255(f)(4), the motion to amend the petition is untimely, and permitting amendment would be futile. *See Speed v. United States*, No. 04 CR. 336 PKC, 2013 WL 416026, at *4 (S.D.N.Y. Feb. 4, 2013) ("Because it is untimely and futile, the motion to amend is denied.").[10]

## IV.    CONCLUSION

For the foregoing reasons, Petitioner's § 2255 motion (Dkt. 335) is denied, and his request to amend his petition (Dkt. 358) is also denied. The Clerk of Court is directed to close Civil Action No. 1:23-CV-00223 EAW. Further, the Court declines to issue a certificate of appealability, because Petitioner has failed to make a substantial showing of the denial of a constitutional right. *See* 28 U.S.C. § 2253(c).

SO ORDERED.

ELIZABETH A. WOLFORD
Chief Judge
United States District Court

Dated:      February 10, 2026
            Rochester, New York

---

[10]    To excuse the untimeliness of his new claims, Petitioner is required to demonstrate that he is entitled to equitable tolling of the statute of limitations based on extraordinary circumstances and that he acted with reasonable diligence throughout the period he seeks to toll, or that he is actually, factually innocent. Based on Petitioner's allegations in the motion to amend, he has failed to demonstrate extraordinary circumstances that prevented him from timely filing his motion to amend—rather, Petitioner simply waited for stronger evidence that Granville and his team were allegedly untrustworthy and corrupt. As to actual innocence, there is nothing in Petitioner's motion to amend suggesting that he has new reliable evidence that credibly and compellingly shows that he is factually innocent. Again, Petitioner confessed to being involved in a kilogram-level cocaine distribution conspiracy.

- 27 -